**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

       **Plaintiff,**                **CASE NUMBER: 05-80949
HONORABLE VICTORIA A. ROBERTS**

v.

**SHERMAN PEGROSS,**

       **Defendant.**
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on Defendant Sherman Pegross' pretrial motions.

The following motions are pending for disposition:

    A.    Motion for Disclosure of Brady Material and Information [Doc. 91]

    B.    Motion for Order Requiring Government Agents to Retain Rough Notes [Doc. 92]

    C.    Motion for Order for Witness List [Doc. 93]

    D.    Motion for Order Allowing Defendant to Obtain Copy of Original Signed Indictment [Doc. 97]

    E.    Motion to Dismiss for Abusive Practices [Doc. 83]

    F.    Motion to Suppress Defendant's Statement [Doc. 98]

    G.    Motion to Suppress Evidence Unlawfully Seized from Defendant's Automobiles Without a Warrant [Doc. 99]

    H.    Motion to Dismiss for Vindictive Prosecution [Doc. 88]

Oral argument was had on June 15, 2007.

1

## III. APPLICABLE LAW AND ANALYSIS

### A. Motion for Disclosure of Brady Material and Information [Doc. 91]

Even though the Court entered a Standing Order for Discovery requiring the Government to disclose material that falls within the scope of either *Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Giglio*, 405 U.S. 150 (1972), and the Jencks Act, 18 U.S.C § 3500, Defendant requests all information and material known or in the possession of the Government that may be used to impeach government witnesses who testify at trial. Specifically, Defendant requests disclosure of: (1) any consideration given to witnesses for testimony; (2) any information which might cause a witness to color his testimony in the government's favor, such as threats or coercion; (3) prior felony convictions, juvenile adjudications, and "rap sheets" of witnesses; (4) any "bad acts" evidence; (5) any evidence of "basic mental trouble"; (6) identification of other occasions in which the witnesses testified, including polygraph examinations; and (7) if the witness is an informer, accomplice, or co-conspirator, all occasions the witness testified even if unrelated to the case.

In response, the Government notes that most of the information requested is outside the scope of Federal Rule of Criminal Procedure 16, which governs pre-trial discovery in criminal cases. Further, the Government contends that it provided Defendant with or made available for inspection thousands of discovery documents, which include potential *Brady - Giglio* materials. And, the Government intends to make available any remaining materials of which it becomes aware three days prior to trial.

The discovery available in criminal cases is generally circumscribed by three rules: (1) Fed.R.Crim.P. 16; (2) the Jencks Act, 18 U.S.C. § 3500; and (3) the doctrine

set forth in *Brady*. *Brady v. Maryland*, 373 U.S. 83 (1963)(stating that in criminal prosecutions, these three rules "exhaust the universe of discovery to which the defendant is entitled"). Rule 16 requires the government to disclose, upon a defendant's request, any oral or written statements of the defendant, the defendant's prior record, any documents or tangible evidence within the government's possession, custody or control, reports of examinations or tests, and a summary of any expert witness testimony. FED. R. CRIM. P. 16(a).

The Jencks Act "generally requires the government, on motion of a defendant, to produce statements in its possession of witnesses who testify at a trial." *United States v. Short*, 671 F.2d 178, 185 (6th Cir.1982). The government is only required to produce the statement after the witness has testified on direct examination. 18 U.S.C. § 3500(a). The *Brady* doctrine requires the government to disclose evidence favorable to the accused, if the evidence is material to guilt or sentencing. *Id.* at 87. This rule also extends to evidence which could be used to impeach the credibility of a government witness. *Giglio v. United States*, 405 U.S. 150, 154-55(1972) (impeachment evidence falls within *Brady* "[w]hen the reliability of a given witness may well be determinative of guilt or innocence").

Regarding the timing of these disclosures, the Sixth Circuit held that "so long as the defendant is given impeachment material, even exculpatory impeachment material in time for use at trial," the defendant's Constitutional rights are not violated. *United States v. Presser*, 844 F.2d 1275 (6th Cir. 1988). In *Presser*, the Sixth Circuit examined *Brady* and its progeny and concluded that *Brady* does not establish a general right of discovery of nonmaterial impeachment evidence. *Id.* at 1277-78 (citing *United States v.*

3

*Bagley*, 473 U.S. 667, 675 (1985), and *Weatherford v. Busey*, 429 U.S. 545, 559 (1977).

To the extent Defendant seeks prior statements, testimony, or other impeachment evidence that is within the ambit of the Jencks Act, the Act expressly precludes such discovery at this stage. *Presser,* 844 F.2d at 1283; *see* 18 U.S.C. § 3500 ("In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a government witness or prospective government witness . . . shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."). It is the clear and consistent rule of the Sixth Circuit that "the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial." *Id.*

The Court will not compel pre-trial discovery where, as here, the Government has conceded that it is aware of its obligations under Rule 16, *Brady*, and *Giglio*; and Defendant fails to establish that any of these rules require disclosure of the requested material at this time. As the Sixth Circuit stated in *Presser*, "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id.* at 1281 (citing *Bagley*, 473 U.S. at 675). The Government represents that it will comply with its *Brady* obligations in time for effective use at trial. Accordingly, Defendant's motion is **DENIED**.

B. **Motion for Order Requiring Government Agents to Retain Rough Notes**

[Doc. 92]

The Government assures the Court that to the extent such notes exist, it directed case agents to retain them pending trial.

This Motion is **MOOT**.

C.      **Motion for Witness List** [Doc. 93]

Defendant requests the Court to order the Government to provide him with a witness list at least 60 days prior to trial in order to effectively prepare for trial. However, at the hearing the Government and Defendant agreed that the witness list would be produced one week before trial.  Further, Defendant's counsel will not show the witness list to Defendant.

This motion is **MOOT**.

D.      **Motion for Order Allowing Defendant to Obtain Copy of Original Signed Indictment and to Dismiss Due to Abusive Practice** [Doc. 97, 83]

Defendant filed a motion requesting that the Court enter an order directing the Clerk of Court to obtain a copy of the original, signed, Third Superseding Indictment and to dismiss due to abusive practices.  Defendant contends that failure to provide him with the original signed indictment violates local rules, his due process rights, and constitutes abusive practices by the Government.  Thus, Defendant argues that a copy of the signed indictment is necessary to ascertain whether or not the government complied with local court rules.

The Government maintains that all charging papers were filed in accordance with local rules.  The Government explains that the Indictment, Superceding Indictment,

Second Superceding Indictment, and Third Superseding Indictment, which contains the original signature of the Assistant United States Attorney and the Grand Jury Foreperson, are maintained in the Court vault and that the original charging documents containing electronic signatures are available on the Court Electronic Case Filing site. Pursuant to Court policy, the charging documents with the original signatures of the AUSA and Grand Jury Foreperson are maintained in the Court vault and are unavailable for public inspection. Although the Government takes no position on Defendant's request to view the original charging documents, it does request that the Court assure the continued anonymity of the grand jury foreperson.

It is true that "documents containing identifying information about jurors or potential jurors" are not available to the public. *See* Guidance for Implementation of the Judicial Conference Policy on Privacy and Public Access to Electronic Criminal Case Files, Section II. Section III instructs that "documents containing identifying information about jurors or potential jurors" shall not be included in the public case file and should not be made available to the public. The purpose of this policy is to ensure the privacy of criminal defendants. It does not appear that the purpose of the policy was to prevent Defendants from viewing their own criminal files.

Defendant's counsel – without explanation– insists that the electronic filing of the indictment and signature of the grand jury foreperson is inadequate. Defendant also filed a motion seeking copies of the original indictment; he alleges the Government engaged in abusive practices by not providing a copy and that the indictment perhaps has been altered.

To uphold the policy and allay Defendant's concerns, the Court will inspect the

indictments *in camera* along with Defendant's counsel and the Government. However, Defendant's counsel may not disclose the name of the foreperson – not even to Defendant. The Court finds this remedy fairly protects the Defendant's due process rights. In addition, the Court finds there is no evidence that the Government intentionally withheld the original charging documents or engaged in abusive practices.

Defendant's Counsel's, [Doc. 97] motion is **GRANTED** in part and **DENIED** in part. Defendant's motion [Doc. 83] is **DENIED**.

**E.    Motion to Suppress Defendant's Statement** [Doc. 98]

In a motion to suppress, Defendant argues that on December 16, 2000 and December 19, 2003 he made statements to the police and/or government agents without being advised of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966). The Court held an evidentiary hearing and finds that the statements were not taken in violation of *Miranda*.

According to the Government, Defendant made three statements to law enforcement officers, two of which the Government intends to introduce at trial in its case-in-chief. On December 19, 2000, Defendant allegedly made a "non-custodial" statement to federal task force agents. The Government does not intend to introduce this statement during its case-in-chief, but reserves the right to introduce it during cross examination of Defendant or as rebuttal evidence.

Defendant's second statement occurred on December 16, 2003. After his arrest by officers of the Bloomfield Township Police Department ("BTPD"), Defendant contacted an investigator from the BTPD and requested a meeting. The BTPD

7

investigator invited agents from the Detroit Metro Identity Fraud Task Force ("DMIF") to the meeting. DMIF Officer Stoinski attended the meeting. Officer Stoinski testified that on December 16, 2003, Defendant met and spoke with BTPD investigators and DMIF. During the interview, Officer Stoinski testified that Defendant was not in custody or charged with any federal crimes.

Instead, Defendant walked into the police station voluntarily and was free to leave at anytime. Although Officer Stoinski admits Defendant did not receive *Miranda* warning because he was not in custody, he does state that Defendant was informed that he did not have to speak without an attorney present and that he could decline to answer certain questions. According to Officer Stoinski, Defendant indicated that he would rather his attorney not know about the meeting. Defendant spoke with the officers for approximately thirty to forty minutes before leaving the station.

The Government seeks to introduce these December 16th statements at trial. It argues that because at the time the statements were made Defendant was not charged with any federal crimes, in custody, or coerced into making statements, *Miranda* is inapplicable.

The third statement the Government seeks to introduce was made on February 13, 2004 when Defendant was arrested by task force agents.[1] The Government contends that Defendant agreed to speak to agents without consulting an attorney after

---

[1] Although Defendant's motion to suppress does not include these statements, the Court heard oral argument and evidence was put into the record regarding the Febuary 13, 2004 statements. The Court will presume that Defendant's motion to suppress statements obtained in violation of *Miranda* includes the Febuary 13, 2004 statements.

he was advised of his *Miranda* rights. Regarding these statements, Officer Stoinski testified that Defendant was arrested on a felony warrant issued in Colorado for credit card fraud. Officer Stoinski testified that he orally advised Defendant of his Miranda rights by reading from a card that he uses in his work. Officer Stoinski also stated that Defendant acknowledged he understood his rights and did not want an attorney. During transport to the police station, Officer Stoinski questioned Defendant about credit card fraud activities in the Detroit, Michigan area. The questioning continued at the police station. Shortly after being booked, Defendant indicated to Officer Stoinski that he no longer wanted to answer questions. Officer Stoinski says he immediately stopped the interrogation and Defendant was transported to the county jail.

Under *Miranda v. Arizona*, 384 U.S. 436 (1966), a suspect taken into police custody must be informed prior to any questioning that he "has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 445. These warnings, however, are only needed in the cases of "custodial interrogations," which the Supreme Court defines as cases of "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444. "'[I]n the absence of any formal arrest or restraint on freedom of movement,' custody is not established simply because the questioning 'took place in a 'coercive environment,'" such as a police station.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

In order for *Miranda* to apply, the Sixth Circuit requires that the suspect must either actually be taken into custody or the restraint on his freedom must rise to the level

associated with a formal arrest. *See United States v. Salvo*, 133 F.3d 943, 948 (6th Cir.1998). Indeed, the Supreme Court and the Sixth Circuit found *Miranda* inapplicable when a suspect voluntarily comes to the police station, is told he was not under arrest, and is free to leave. *See Mathiason*, 429 U.S. at 495 (1977) (holding that the suspect was not in custody because he: (1) came to the police station voluntarily; (2) was told he was not under arrest; and (3) left without hindrance); *see also California v. Beheler*, 463 U.S. 1121, 1126 (1983); *Singleton v. Carter*, 74 Fed.Appx. 536, 541 (6th Cir. 2003). Therefore, the Court must look to the circumstances surrounding the statement and the details of the interrogation in determining whether to suppress a defendant's statements under *Miranda*. *Mathiason*, 429 U.S. at 495 (noting that the circumstances of each case influence the determination of whether the suspect is in custody for purposes of receiving *Miranda* protection). If *Miranda* applies, the defendant's statements may not be introduced in the prosecution's case-in-chief as evidence of guilt. *E.g. California v. Beheler*, 463 U.S. 1121 (1983).

The Court finds that Defendant was not in "custody" when he made statements to the task force agents on December 16, 2003. The evidence in the record indicates that Defendant initiated the meeting with agents, voluntarily came to the police station, and was free to leave at anytime. Therefore, under *Mathiason* Defendant was not in custody and, therefore, is not "entitled to the full panoply of protections prescribed by *Miranda*." *Berkemer v. McCarthy*, 468 U.S. 420, 440 (1984).

The Court also declines to suppress the February 13, 2004 statements. Officer Stoinski admits that Defendant made the statements in response to his questioning during the transport to the police station. A suspect may waive his Fifth Amendment

rights during a custodial interrogation, if the waiver is made "voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. Defendant does not allege any coercive conduct by Officer Stoinski. Although the statements were given while Defendant was under arrest, in custody, and in a police vehicle, no threats were made to coerce Defendant into making statements. Defendant also acknowledged that he understood his rights under *Miranda*. Thus, the Court finds that the statements were voluntarily made.

Defendant's motion is **DENIED**.

**F.  Motion to Suppress Evidence Unlawfully Seized from Defendant's Automobiles Without a Warrant** [Doc. 99]

At the hearing, Defendant withdrew his Motion to Suppress Evidence seized from two automobiles. The Government did not object.

This Motion is **MOOT**.

**G.  Motion to Dismiss for Vindictive and Selective Prosecution** [Doc. 88]

Defendant contends that the Government has engaged in vindictive and selective prosecution. He claims that the Government's subsequent filing of a Second and Third Superseding Indictment after he refused to enter a plea of guilty constitutes vindictive prosecution, and that the Government's failure to indict other individuals involved in the real estate transactions for which he is being charged demonstrates selective prosecution.

In support of his claim, Defendant cites a June 15, 2006 plea hearing. At this hearing, Defendant was to enter into a Rule 11 Plea Agreement with the Government. Under the terms of the Rule 11, Defendant would plead guilty to one count of the eleven

count indictment.  Defendant, however, informed the Court that he did not wish to plead guilty.  He alleged that the prosecutor and his counsel used threats and coercion to convince him to sign the Rule 11.  Specifically, Defendant says that the Government threatened to file a superceding indictment with additional charges if he did not sign the Rule 11.  Indeed, the Government was planning to and did file two superseding indictments.  Defendant also argues that the Government improperly included additional charges after he challenged the amount of loss attributable to him in the Rule 11.

Based on these actions, Defendant argues that the Third Superseding Indictment should be dismissed or, in the alternative, counts 1, 12, 13, 14, and 15 should be dismissed because these counts were charged after he informed the Court of the existence of a "scheme devised by defense counsel, the prosecutor, and the Judge's clerk to deceive and manipulate this defendant into signing the plea agreement under false pretence(sic)."  Further, he asserts that the charges were filed because he exercised his constitutional rights: (1) First Amendment Right to Freedom of Speech; (2) Fifth Amendment Right to plead not guilty; and (3) Sixth Amendment Right to a jury trial.

In addition, Defendant requests dismissal of counts 13, 14, and 15 of the Third Superseding Indictment because the Government allegedly engaged in selective prosecution.  The Government argues that Defendant's claims of vindictive and selective prosecution are merit less.

### 1.     **Vindictive Prosecution**

In the Sixth Circuit, prosecutorial vindictiveness can potentially be found in the pretrial addition of charges following pretrial assertion of protected rights.  *United States*

*v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001). In order to show vindictive prosecution there must be (1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; (4) the intent to punish the defendant for exercise of the protected right. *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001). There are two approaches to demonstrating prosecutorial vindictiveness: a defendant can show "actual vindictiveness," by producing "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," or (2) "a realistic likelihood of vindictiveness." *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003). In assessing whether there exists a "realistic likelihood of vindictiveness," the court must weigh two factors: (1) the prosecutor's "stake" in preventing assertion of the protected right and (2) the reasonableness of the prosecutor's actions. *United States v. Poole*, 407 F.3d 767, 776 (6th Cir. 2005)(citing *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980). Charges brought as the result of failure of the plea bargaining process, however, are not vindictive. *Andrews*, 633 F.2d at 456.

Defendant must show more than that he chose not to accept the plea, and chose to exercise his right to trial to meet the first element of the test. "Although the right to a trial by a jury of one's peers is a highly protected right, asserting this right by rejecting a plea bargain is not enough to provide evidence of an improper motive on the part of the prosecution." *Suarez*, 263 F.3d at 479. Defendant fails to present any evidence of an improper motive. He only asserts that the Government's inclusion of additional charges in the superceding indictments was unreasonable and punitive.

A superceding indictment that adds additional charges or substitutes more

severe charges based on the same conduct charged in the first indictment may indicate vindictiveness. *Suarez*, 263 F.3d at 480. The mere presence, however, of a superseding indictment with additional charges is not sufficient to be presumptively unreasonable. *Id.* (citing *Goodwin,* 457 U.S. at 380). Here, the Government informed Defendant's counsel during the negotiation of the Rule 11 that it was scheduled to appear before the grand jury to seek additional charges. Consequently, Defendant's counsel requested that the Government give Defendant the opportunity to plead guilty to a Rule 11, based on the pending Supereceding Indictment. The Government intended to bring additional charges against Defendant before he exercised his right to reject the Rule 11.

"The Supreme Court recognized that 'in the give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). Further, the Court "has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his right to plead not guilty." *Id.* at 364. In *Bordenkircher*, the Supreme Court held that "[i]n our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* at 364 (footnote omitted). Thus, the prosecutor's conduct here, in proceeding with the superceding indictments, cannot be viewed as unreasonable or an improper "stake" in avoiding a trial, especially given the Sixth Circuit's recognition "that actual retaliatory behavior is acceptable, at least in the

14

plea bargaining context." *Dupree*, 323 F.3d at 490.

Because the facts presented do not establish a "realistic likelihood of vindictiveness," the Court concludes the additional charges filed by the Government were not initiated with the intent to punish Defendant for the exercise of his protected rights.

### 2. Selective Prosecution

Similarly, the Court finds that the Government has not engaged in selective prosecution. In asserting selective prosecution, the defendant "bears the heavy burden of establishing, at least prima facie, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights." *United States v. Sammons*, 918 F.2d 592, *600 (6th Cir. 1990). Defendant failed to make such a showing.

"In our criminal justice system, the Government retains broad discretion as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607(1985). Despite Defendant's contentions that the Government selectively chose to prosecute him and not others involved in the fraudulent real estate transactions, there is no evidence that the Government singled out Defendant. Defendant asserts selective prosecution on two grounds: (1) because the Government has not prosecuted other buyers; and (2) because he exercised his constitutional right not to plead guilty the Government chose to bring additional charges. These allegations are not supported by evidence.

15

The Supreme Court admonished that "[t]he presumption of regularity supports' [ ] prosecutorial decisions and 'in the absence of clear evidence to the contrary, courts presume [prosecutors] have properly discharged their official duties." 'Armstrong, 116 S.Ct. at 1486, quoting *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14-15 (1926). Because Defendant only presents allegations, the Court finds that Defendant has not overcome the presumption that the prosecutor did not engage in selective prosecution.

Defendant's motion to dismiss for vindictive and selective prosecution is **DENIED**.

### III.   CONCLUSION

For the reasons stated, the Court disposes of the Defendant's Motions as follows:

   A.   Motion for Disclosure of Brady Material and Information: **DENIED**;

   B.   Motion for Order Requiring Government Agents to Retain Rough Notes: **MOOT**;

   C.   Motion for Order for Witness List: **MOOT**;

   D.   Motion for Order Allowing Defendant to Obtain Copy of Original Signed Indictment: **GRANTED** in part and **DENIED** in part;

   E.   Motion to Dismiss for Abusive Practices: **DENIED**;

   F.   Motion to Suppress Defendant's Statement: **DENIED**;

   G.   Motion to Suppress Evidence Unlawfully Seized from Defendant's Automobiles Without a Warrant: **MOOT**;

   H.   Motion to Dismiss for Vindictive Prosecution: **DENIED**.

**IT IS ORDERED**.

                                                                <u>s/Victoria A. Roberts</u>  
                                                                Victoria A. Roberts  
                                                                United States District Judge

Dated: June 15, 2007

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record and Sherman Pegross by electronic means or U.S. Mail on June 15, 2007. |
| <u>s/Linda Vertriest</u> |
| Deputy Clerk |