**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


**UNITED STATES OF AMERICA,**

      **Plaintiff,**

                                   **Case No: 05-80949**
                                   **HONORABLE VICTORIA A. ROBERTS**

**vs**

**SHERMAN PEGROSS,**

      **Defendant.**

_____/


**OPINION AND ORDER**

**I.    INTRODUCTION**

    Defendant comes before the Court to be sentenced.

**II.   BACKGROUND**

    On October 19, 2005, Defendant was named in a 10 count indictment filed under

seal in the Eastern District of Michigan.  A warrant issued for his arrest on November

22, 2005.   Defendant appeared the same day and was ordered temporarily detained by

Unites States Magistrate Judge Mona K. Majzoub.  His detention was continued on

several occasions.  The Government filed three superseding indictments.

    On June 29, 2007, pursuant to a Rule 11 Agreement, Defendant pled guilty to

Count V Access Device Fraud, 18 U.S.C. § 1029(a)(1)(B).  Although Count V states a

loss amount of $349.22, the parties agreed in the Rule 11 that the acts described in

other counts are relevant conduct for the intended loss amount of Count V.  This initial

Rule 11 contained a disagreement between the parties on the intended loss amount, later resolved in a February 2008 Rule 11.

In the first Rule 11, the Government calculated a Guidelines range of 63-78 months based on a loss amount of $200,000 to $400,000. Defendant calculated a Guidelines range of 51-63 months based on a loss amount of $120,000 to $200,000.

Defendant filed a Motion to Withdraw Plea of Guilty on August 29, 2007. The Court heard oral argument on October 4, 2007 and denied the Motion.

An evidentiary hearing on the loss amount did not occur as scheduled on February 14, 2008. Instead, the parties entered into a new Rule 11. Both parties agreed to a Guidelines range of 46-57 months based on a stipulated loss amount of $198,620.27. They also agreed to a stipulated restitution amount of $118,620.27. The new Rule 11 range is lower than Defendant's range in the first Rule 11 because it lowers Defendant's Criminal History from VI to V. Probation agrees Defendant's Criminal History Category is V.

Defendant has the right to withdraw from the new Rule 11 or appeal if the Court sentences him above 57 months.

Defendant filed numerous letters, requests, and motions. Before the Court now are: (1) 18 pages of objections to the PreSentence Investigation Report ("PSIR") by Defendant and his standby counsel; (2) a motion for downward departure under § 5K2.0; (3) a Pro Se Supplemental Sentencing Memorandum; and (4) a Sentencing Memorandum submitted by counsel. The Government did not respond.

Defendant has a significant criminal history:

(1) Extortion, 6th Circuit Court, 2 years probation (3/15/88, Age 18);

(2) Counts I and II Retaining Financial Transaction Device Without Consent, Count III Habitual Offender (Second Offense), 6th Circuit Court, 60 days in jail 30 days suspended (6/24/90, Age 20);

(3) Conspiracy to Commit False Pretenses Over $100 (Habitual Offender, Third Offense), 6th Circuit Court, 27 days jail (1/21/92, Age 22);

(4) Driving While License Suspended, 46th District Court, 2 years probation (2/29/92, Age 22);

(5) False Pretenses Over $100, 3rd Circuit Court, 5 years probation, first year jail) (3/19/92, Age 22)  (violation 11/07/95, 6 months jail);

(6) Altered/Forged License, Driving While License Suspended, 46th District, 2 years probation 28 days jail (3/17/93, Age 23);

(7) Count I Carrying a Concealed Weapon, Count II Driving While License Suspended or Subsequent Offense, Count III Habitual Offender (Fourth Offense), 6th Circuit Court, Counts I & III 2 years probation, Count II 2 years probation with the first 90 days in jail (3/31/95, Age 25);

(8) Count I Conspiracy to Traffic in Counterfeit and Unauthorized Access Devices, Count II Use of Counterfeit Access Devices, Aiding and Abetting, E.D. Mich. District Court (3/14/96, Age 26);

(9) Count XXXXII False Statements, Aiding and Abetting, E.D. Mich. District Court,18 months custody (10/25/96, Age 26) (violation 5/29/01, 12 months custody);

(10) Theft $500 to 15,000, Larimer District Court, Colorado, 3 years probation (arrested 10/25/00, Age 30, and sentenced 2/7/2005); and

(11) Count I - IV, Stealing/Retaining a Financial Transaction Device Without Consent, 6th Circuit Court, 3 years probation, 1 year served in jail (10/21/03 Age 33) (probation revoked 4/25/05, 60 days in jail).

Defendant's "other criminal conduct" includes: (1) in January 1988 Defendant was arrested by the Southfield Police for breaking and entering, but granted Holmes Youthful Trainee Act status and placed on probation; and (2) in March 1988 Defendant was arrested by the Southfield Police for possession of a controlled substance.  The

court granted a no nolle pros motion for the offense.

Defendant's "pending charges" include a failure to comply with probation for his conviction on theft charges out of the Larimer District Court in Fort Collins, Colorado. A warrant issued February 24, 2006, and provides for nationwide extradition. Bond is set at $7,500.

## III.    ADVISORY GUIDELINES

### A.    Probation Calculation

Probation begins with a base offense level of 7 under § 2B1.1(a)(1). Pursuant to § 2B1.1(b)(1)(G), Probation adds an additional 12 offense points because it finds the calculated loss is more than $200,000 but less than $400,000. In addition, it applies two offense points under § 2B1.1(b)(2)(A)(I) because the offense involved more than ten victims, two points under § 2B1.1(b)(10)(B) because the crime involved the production or trafficking of an access device or counterfeit access device, and four points under § 3B1.1(a) for Defendant's role as an "organizer" of criminal activity that involved five or more participants. After a three point reduction for acceptance of responsibility, Probation calculates an offense level of 24.

After adjusting Defendant's criminal history points in response to Defendant's objections, Probation finds 12 criminal history points, and a resulting Criminal History Category of V. Probation holds Defendant accountable for an intended loss of $247,198.21, an offense level of 24, a Criminal History Category of V, and a resulting Guidelines range of 92-115 months.

**B.     New Rule 11 Calculation**

Defendant relies on his revised February 2008 Rule 11.  He calculates an offense level of 17, Criminal History Category of V, and a resulting Guidelines range of 46-57 months.  The difference in Probation's calculations arises from: (1) Probation's application of a higher loss amount than the stipulated amount; (2) Probation's application of four offense level points for Defendant's role as an organizer under § 3B1.1(a); and (3) Probation's increase of the base offense level from 6 to 7 because of a statutory maximum of 20 years not accounted for in Defendant's Rule 11.  Probation and the new Rule 11 both calculate Criminal History Category V (based on 12 criminal history points).

**C.     Court's Guideline Determination**

**1.     Generally**

Defendant has an offense level of 18, a Criminal History Category of V, and a resulting Guidelines range of 51-63 months.  Contrary to the Rule 11, Defendant's base offense level is 7 instead of 6 under § 2B1.1(a)(1), because the statutory maximum sentence is twenty years.

After applying ten offense points for the stipulated intended loss of $120,000 to $200,000 under § 2B1.1(b)(1)(F), two points for a crime involving ten victims, and two points for trafficking in access devices under § 2B1.1(b)(10)(B), Defendant's offense level becomes 21.

In light of the Government's admission that it cannot meet its burden of proof on an enhancement under §3B1.1, the Court declines to apply additional points for

Defendant's role in the offense. After a three point reduction for Defendant's acceptance of responsibility, his final offense level is 18.

Defendant's Rule 11 concurs with these calculations in all aspects except the base offense level.

## 2.    Statutory Maximum and Base Offense Level Under § 2B1.1(a)(1)

Under § 2B1.1(a)(1), which governs the Guidelines range for violations of 18 U.S.C. § 1029(a)(1), Defendant's base offense level is 7. The guideline advises a base offense level of 7, "if . . . the defendant was convicted of an offense referenced to th[e] guideline; and . . . that offense of conviction has a statutory maximum term of imprisonment of 20 years or more." U.S.S.G. § 2B1.1(a)(1). Under § 1029(c), the penalty provision for violations of § 1029, the statute provides "in the case of an offense that occurs after a conviction for another offense under this section, a fine under this title or imprisonment for *not more than 20 years*, or both . . . ." 18 U.S.C. § 1029(c)(1)(B) (emphasis added). Defendant previously pled guilty to violation of the statute on January 6, 1998, and was sentenced to 18 months custody followed by three years supervised release.

The Court finds the statutory maximum for the offense is twenty years. Accordingly, § 2B1.1(a)(1) mandates a base offense level of 7.

## 3.    Aggravating Role

Although Probation recommends application of additional points for Defendant's role in the offense under § 3B1.1, when questioned, the Government conceded it could not meet its burden of proof on the enhancement. In light of the Government's

concession, the Court declines to apply additional offense points.

## IV.   OBJECTIONS

### 1.   Generally

Defendant and counsel submitted 18 pages of objections to the original March 27, 2008 PSIR.  Probation concluded that some of the objections had merit, and submitted a revised June 2, 2008 PSIR reflecting these changes.

### 2.   Defendant's Objections

#### Objection 1

Defendant argues Probation incorrectly applies 18 U.S.C. § 1029(c)(1)(B) and finds a statutory maximum of twenty years instead of ten years as described in 18 U.S.C. § 1029(a)(1), the offense to which he pled guilty.  Probation responds that § 1029(c) contains the penalties for violation for § 1029(a)(1).  Because Defendant was previously convicted under § 1029, § 1029(c)(1)(B) provides for a statutory maximum sentence of 20 years.  18 U.S.C. § 1029.  Probation refers the Court to counsel's signature on Defendant's Acknowledgment of the Third Superceding Indictment, which provides notice to the Defendant of the possibility of an increased statutory maximum resulting from a prior conviction under the statute.  The Court previously concluded it agreed with Probation's determination that the statutory maximum for the offense is twenty years.

Nonetheless, at Defendant's plea hearing, counsel for the Government stated "Count Five charges the Defendant with Access Device Fraud in violation of Title 18

United States Code Section 1029(a)(1). *The maximum penalty is 10 years imprisonment and/or a 250,000 fine.*" Rough Copy Plea Transcript at 12 (emphasis added). Counsel for the Government repeated this assumption during the plea when he stated: "[a]s I've indicated to the Court, [Count 5] charges Access Device Fraud in violation of Title 18 United States Code Section 1029(a)(1), *for which the maximum statutory penalty is 10 years imprisonment and/or 250,000 fine.*" *Id.* at 14-15 (emphasis added). Both Rule 11 agreements state a statutory maximum of ten years. June 28, 2007, Rule 11 at 1; February 14, 2008 Rule 11 at 1.

While this appears to be a violation of FED. R. CRIM. P. 11(b)(1)(H) (Court must inform Defendant of the maximum penalty), the Court's error is harmless under Rule 11(h) so long as the sentence it imposes on Defendant does not exceed the ten year maximum stated at the plea hearing. *See Williams v. United States*, 47 F. App'x 363, 368 (6th Cir. 2002) (unpublished); *United States v. Syal*, 963 F.2d 900, 906 (6th Cir. 1992); *see also United States v. Douglas*, 242 F. App'x 324 (6th Cir. 2007) (unpublished) (noting failure to state a maximum sentence was harmless error where defendant had actual notice of the statutory maximum from the indictment and his initial appearance). In light of the Court's intention to sentence Defendant to less than ten years, the Court's failure to fully comply with Rule 11(b)(1)(H) does not affect Defendant's substantial rights; it does not raise a serious question about whether Defendant would have pled guilty. *See United States v. Reader*, 254 F. App'x 479, 481-482 (6th Cir. 2007) (unpublished).

**Objection 2(A)**

Defendant objects to information on the cover page of the PSIR on the ground that he has never been incarcerated by the Michigan Department of Corrections ("MDOC"), and to his knowledge, does not have an MDOC number. Probation responds that it received the MDOC number attributed to Defendant from the MDOC website, Defendant's state probation file, and a law enforcement network information ("LEIN") criminal records inquiry.

Defendant has eight convictions for violations of Michigan laws. It is hard to believe that despite these convictions Defendant never received an MDOC number.

The Court accepts Probation's findings.

**Objection 2(B)**

Defendant contests his use of approximately two thirds of the aliases listed on the cover page of the PSIR. Probation responds it collected lists of his aliases from "various sources including, but not limited to . . . [a] Federal presentence report prepared in 1997, law enforcement information network criminal record inquiry, the Indictment in this case and the Southfield Police Department." Obj. Adden. at A-2.

The Court accepts Probation's findings.

**Objection 2(C)**

Defendant objects that he never used social security number No. 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 "at any time for any reason," but concedes he "may have, in the past, misquoted [his] . . . Social Security Number when not carrying [his] SS card." Objections to PSIR at A-3.

Probation responds it received this information from a LEIN inquiry.

Defendant admits he may have on occasion inadvertently provided No. 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 instead of his own number. The Court is satisfied that Defendant provided and used No. 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.

The Court accepts Probation's finding.

**Objection 2(D)**

Defendant objects that he does not "recall" representing his birth date as July 17, 1970, as stated in the identifying date page of the PSIR. Probation responds that it received this information from the LEIN system.

Defendant only states he does not recall representing his birth date as this date, but does not affirmatively state he did not do so.

The Court accepts Probation's finding.

**Objection 3(A)**

Defendant states he did not "produce" any counterfeit object, as stated in the PSIR paragraph 15. Probation responds that this information is a summary of the conduct described in Count I, which Defendant's Rule 11 lists as relevant conduct. February 2008 Rule 11 at 3.

Count I of the Second Superceding Indictment states in pertinent part that "[i]t was the role of [Sherman Pegross] in the conspiracy to produce and to obtain counterfeit Visa, Mastercard, Discover, American Express, Office Max, J.L. Hudson,

J.C. Penny, and other credit cards." Third Superceding Indictment at 3.

Nonetheless, Defendant's response to the Court's questioning at his plea hearing indicates a lack of acceptance responsibility for the "production" of the counterfeit cards:

The Court: And you used a counterfeit Mastercard?

Defendant: Yes, ma'am.

The Court: That you had put a fake name on?

Defendant: *That a fake name was on, yes.*

Plea Tr. at 17-18 (emphasis added). Defendant's nuanced answer does not clearly accept responsibility for production.

Earlier in Count I, the wording makes clear that "produce" is used to indicate "manufacture": "certain coconspirators would *produce* counterfeit credit cards." Third Sup. Indic. at 2. Defendant is listed as one of these coconspirators under Count I, and his Rule 11 stipulates this is relevant conduct.

The Court accepts Probation's finding.

**Objection 3(B)**

Defendant objects that he did not participate in mortgage schemes as described in PSIR paragraph 16. Counts 13 and 15 of the Third Superceding Indictment describe this conduct, and the Rule 11 stipulates these counts are relevant conduct.

The Court accepts Probation's finding.

**Objection 3(C)**

Defendant objects to being held accountable for the additional acts of Rochelle Rogers. Probation responds that the February 2008 Rule 11 includes losses attributable to Rochelle Rogers' conduct. February 2008 Rule 11, Attach. at 3-4.

The Court accepts Probation's finding.

### Objection 3(D)

The Court accepts the Rule 11 Agreement on the loss amount.

### Objection 4(A)

Probation correctly calculates a statutory maximum of 20 years and is correct that § 2B1.1(a)(1) dictates a base offense level of 7, and not 6 as suggested by Defendant. The Court explained that its violation of Rule 11 was harmless error because it does not intend to sentence Defendant to more than ten years.

The Court accepts Probation's finding.

### Objection 4(B)

The Court accepts the Rule 11 Agreement on loss amount.

### Objection 4(C)

Defendant argues Probation incorrectly applies four offense level points for his role as an organizer under § 3B1.1(a). The Government concedes it cannot meet its burden of proof on this enhancement, and the Court declines to apply additional offense level points.

### Objection 4(D)

Defendant objects to Probation's calculation of an adjusted offense level of 27, before a three point reduction for acceptance of responsibility. Defendant points to his February 2008 Rule 11 Agreement, which calculates an adjusted offense level of 20 before the three point reduction. The seven point difference results from Probation's addition of four points for Defendant's role as an organizer, two additional points for a higher intended loss amount, and a base offense level of 7 instead of 6.

Neither party is completely correct. Defendant's adjusted offense level before the reduction is 21, with a final offense level of 18. For the reasons discussed above, Defendant's objection to a base offense level of 7 is without merit. The Court accepts Defendant's stipulated loss amount and declines to apply additional offense points under 3B1.1.

**Objection 4(E)**

This objection duplicates 4(D).

**Objection 5(A)**

Defendant says contrary to paragraph 37, he was not in a substance abuse program at any time for any reason. Probation responds that according to a judgment of probation for the offense of extortion at age 18, the records of the 6th Circuit Court in Pontiac, Michigan state Defendant was ordered to participate in "Offender Aid and Restoration," a residential substance abuse program provided by a private sector vendor.

The Court accepts Probation's finding.

**Objection 5(B)**

Defendant objects to paragraph 39, and states that he paid the $300 fine referenced in paragraph 39 in order to suspend thirty days of his sixty day sentence. Probation responds that PSIR's for 1997 and 1998 report that payment was not made, and reports it has no documentation of payment.

The Court accepts Probation's finding.

**Objection 5(C)**

Defendant objects that the conviction for Conspiracy to Commit False Pretenses Over $100, referenced in paragraphs 40 and 41, did not result in a 27 day jail term, but was suspended after he served one day.

Probation responds that the Amended Judgment Order filed with the clerk on May 29,1992 states the Defendant was given credit for one day served, and nothing indicates the remaining 26 days were to be suspended.

The Court accepts Probation's finding.

**Objection 5(D)**

This objection is moot. (PSIR already amended).

**Objection 5(E)**

This objection is moot. (PSIR already amended).

**Objection 5(F)**

Defendant objects to the statement in paragraph 55 that his picture was on identification with the name Douglass Adams. Probation says it acquired this information from a 1997 PSIR, which was in turn derived from the United States Secret Service, Ohio State Highway Patrol, and the Assistant United State Attorney in the 1997 matter. Pointedly, Defendant failed to object to this information in the 1997 PSIR.

The Court accepts Probation's findings.

**Objection 5(G)**

This objection is moot. (PSIR already amended).

**Objection 5(H)**

Defendant objects that he was not ordered to pay restitution of any kind following his conviction for False Statements, Aiding and Abetting, described in paragraph 61.

Probation responds that although the specific restitution amount was not listed in the judgment, the court docket notes restitution in the amount of $13,018.

The Court grants Defendant's objection on this point. The judgment dictates the punishment, and the failure to include restitution in the judgment cannot reasonably be corrected by a notation in the docket.

**Objection 5(I)**

Defendant says he did not serve jail time for the traffic tickets listed in paragraph 69. Probation responds that it stated Defendant received sentences for thirty days *and/or* a probationary sentence, and lists them in summary format in the PSIR because

they do not result in criminal history points under § 4A1.2(c). Defendant's objection is not contrary to Probation's statements. This objection is without merit.

**Objection 5(J)**

This objection is moot. (PSIR already amended).

**Objection 5(K)**

Defendant objects to paragraph 72 which states Defendant was convicted of breaking and entering, an offense for which he was granted Holmes Youthful Trainee Act status. He contends he was only charged with illegal entry. Probation responds the information was based on a 1998 PSIR, to which Defendant did not object.

The Court accept's Probations finding.

**Objection 5(L)**

Defendant objects to the designation of disposition "unknown" for the arrests listed in paragraphs 75, 76, 77, and 81 under pending charges. He says these designations affect his security rating with the BOP. Defendant says the charge of Larceny in a Building in paragraph 75, and the charge of Malicious Destruction of Personal Property Over $100.00 in paragraph 76, were both dismissed. He adds the charge of Disorderly Conduct described in paragraph 77 resulted in a fine of $25.00, and notes the charge of Malicious Destruction of Property described in paragraph 81 was not prosecuted because no crime occurred.

Probation says the disposition of these offense as "unknown" was derived from a 1998 PSIR, Southfield Police Department reports, and Defendant's Detroit Police

Department arrest file. It notes Defendant did not previously file objections to the dispositions, all of which were stated in his 1998 PSIR.

The Court accepts Probation's findings.

**Objection 5(M)**

Defendant says that contrary to paragraph 102, which states Probation was unable to verify his receipt of a diploma, he received a diploma. He notes he gave a copy to Probation in conjunction with a previous federal offense, and that it should be in his file. Probation responds that the information reflected in paragraph 102 is what it was able to verify. It explains that it was only able to verify the existence of a certificate issued in the name of one of Defendant's aliases, but could not confirm it was issued to and/or related to Defendant. Probation does not have a copy of his diploma in its file.

The Court accepts Probation's findings.

**Objection 5(N)**

As already discussed, the Court's failure to fully comply with Rule 11 is harmless because it does not intend to sentence Defendant in excess of ten years.

**Objection 5(O)**

The Court finds Defendant's offense level is 18, and his objection to his Criminal History Category is moot.

**Objection 6**

The objection contains Defendant's conclusion that Probation maliciously found

certain facts in order to find a higher sentence for Defendant.  This is not an objection, and in any event, the Court does not agree that Probation acted unprofessionally in preparing the PSIR.

**Objection 7**

The Court accepts the Rule 11 Agreement on loss amount.

**3.      Counsel's Objections**

Although counsel separately submitted objections, with the exception of the following objections, they are duplicative or rendered moot by the Court's resolution of Defendant's objections.

**Objection 4**

Counsel objects to the convictions listed in paragraphs 42 (Driving While License Suspended, 1992) and 47 (Altered/Forged License, Driving While License Suspended, 1993).  Counsel says Defendant was not advised of his right to counsel, and argues the convictions should not be counted as they were obtained in violation of the Sixth Amendment.

Probation responds that Michigan law in effect at the time of both convictions required that the court advise defendants of the right to the assistance of counsel.  In addition, Probation reports that contact with the 46th District Court confirmed the court's policy is to advise defendants of their right to counsel.

The Court accepts Probation's findings.

**Objection 6**

Counsel objects to the conviction for driving without a license stated in paragraph 51 as Count II of three, because "Defendant does not believe that his license was suspended at that time and he believes the conviction was in error."   Obj. Adden. A-16.

Probation responds that court records state Defendant pled guilty to all three counts and was sentenced as written.

The Court accepts Probation's findings.

**Objection 9**

Counsel objects to paragraph 113 on the ground that he believes the property on West Seven Mile Road was foreclosed.  Probation noted this information, but left the report as written.

The Court will not change the report, since the Court also concludes Defendant does not have the ability to pay a fine.  Restitution is mandatory.

**V.  DOWNWARD DEPARTURE**

**A.  Pre-Trial Conditions of Confinement**

**1.  Generally**

Defendant requests a downward departure based on pre-trial detention in a state facility he alleges is qualitatively inferior to federal facilities.  He requests a sentence of time served.

This factor is not mentioned specifically in the Guidelines, but the Court has the

authority to depart downward under U.S.S.G. § 5K2.0 and *Koon v. United States*:

> If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland. *The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be highly infrequent.*

*Koon v. United States*, 518 U.S. 81, 96 (1996) (quotations and citations omitted) (emphasis added).

The Sixth Circuit held that district courts may grant a downward departure because of conditions of pre-sentence confinement. *United States v. Rorrer*, 161 F. App'x 518, 522 (6th Cir. 2005) (unpublished) (citing *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001)) ("The Sentencing Commission has not categorically proscribed consideration of this factor, and we cannot say that conditions of pre-sentence confinement may not be so severe as to take a particular case 'outside the heartland of the applicable Guideline.'").

Unfortunately, *Rorrer*, an opinion not cited by Defendant, only stands for the proposition that district courts have the authority to depart downward under § 5K2.0 on account of pre-trial conditions. It does not give the Court much guidance in appropriately addressing a motion on this ground. The guidance of *Koon*, that district courts must "consider[] the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, [and] decide whether it is sufficient to take the case out of the Guideline's heartland," is helpful, but does not articulate specific factors for the Court to consider. *Koon*, 518 U.S. at 96.

For examples of cases where courts have granted downward departures on this ground, the Court must look outside the Sixth Circuit. In *Carty*, the 2001 decision relied on by *Rorrer*, the Second Circuit noted that there was "no consensus amongst the other circuits and the lower courts establishing a district court's right to depart" on account of pre-trial conditions of confinement. *Carty*, 264 F.3d at 196. The Second Circuit determined district courts had such authority:

> No evidence exists to show that the Sentencing Commission took the conditions of a pre-sentence detainee's confinement into account in creating the Guidelines. Indeed, *there is no indication that the Commission contemplated that federal pre-sentence detainees would be kept in any detention facilities other than federal facilities.*

*Id.* (emphasis added) (citing *United States v. Francis*, 129 F. Supp. 2d 612, 616 (S.D.N.Y. 2001)).

The Second Circuit relied heavily on the district court opinion of *Francis*, 129 F. Supp. 2d 612. In *Francis*, after holding several hearings, the court granted a downward departure on account of pre-trial conditions. *Francis* noted:

> To the extent that the Commission may have assumed that federal pre-sentence detainees might be kept in state or county facilities . . . no evidence exists that they contemplated that these facilities would be qualitatively different than federal facilities. Therefore, conditions of confinement below those in federal institutions provide grounds for a departure under U.S.S.G. § 5K2.0.

*Francis*, 129 F. Supp. 2d at 616.

The defendant in *Francis* maintained he was subjected to: (1) inadequate commissary; (2) inadequate television and recreation; (3) overcrowding in the intake cells; (4) inadequate hygiene; (5) lack of Spanish reading materials; (6) problems with

visits; (7) lack of programs or work opportunities; (8) spoiled, unsanitary food that did not meet basic nutritional needs; (9) theft of personal property; (10) an attempted stabbing; (11) loss of twenty to twenty-five pounds in body weight; (12) prevalence of weapons among inmates; (13) rampant and virtually unsupervised gangs; (14) telephones controlled and often blocked by gangs; (15) mingling of federal and state inmates; and (16) threats by other inmates. The defendant's claims were corroborated by witnesses at hearings, and were not convincingly rebutted by the Government.

*Francis* concluded that "the thirteen and a half months that Defendant served at HCCC were under qualitatively different conditions than those of pre-sentence detainees in federal facilities operated by the Bureau of Prisons," and found the defendant "was subjected to extraordinary stress and fear" while housed in the state facility. *Francis*, 129 F. Supp. 2d at 619. Implicit in the holding is not just that conditions were "qualitatively different," but that the divergence from federal standards was extraordinary or exceptional, such that it merited a "highly infrequent" departure under § 5K2.0. *See id.* at 615-616 ("The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.'"); *see also Carty*, 264 F.3d at 196 ("[W]e cannot say that conditions of pre-sentence confinement may not be so severe as to take a particular case 'outside the heartland of the applicable Guideline.'"); *United States v. Ramirez-Gutierrez*, 503 F.3d 643, 646 (7th Cir. 2007) (citing *United States v. Pressley*, 345 F.3d 1205, 1218-1219 (11th Cir. 2003); *Carty*, 264 F.3d at 196) ("The Second and the Eleventh Circuits held, prior to Booker, *that 'extraordinary' conditions of pretrial confinement* could justify a downward departure because the Sentencing Commission likely had not considered

such conditions when formulating the guidelines.") (emphasis added); *United States v. Sutton*, 973 F. Supp. 488, 495 (D.N.J. 1997) (declining to take the "highly infrequent" and "extraordinary measure" of departing downward based on substandard pre-trial conditions); *Isaza v. United States,* No. 06-2687, 2007 U.S. Dist. LEXIS 55871, at *9 (D.N.J. Aug. 1, 2007) ("The conditions of the defendant's pretrial detainment must pose a hardship on the defendant to such an unusual degree as to warrant a downward departure.").

## 2.      Defendant's Pre-Trial Conditions of Confinement

Defendant has been in pre-trial confinement in a state facility since November 22, 2005.  He submitted an 11 page brief and motion accompanied by a thirty-two page Affidavit in Support of Motion and Brief for Downward Departure Pursuant to U.S.S.G. § 5K2.0.  His specific allegations are too voluminous to recount in full, but are summarized below.  Although not certified by a notary public, his statements are sufficient to result in a perjury charge under 28 U.S.C. § 1746 if they are untrue.  *United States v. Gomez-Vigil*, 929 F.2d 254, 256-258 (6th Cir. 1991).

### i.      Wayne County Jail Episode 1

According to Defendant, after arrest and arraignment on November 22, 2005, he was placed in the Wayne County Jail for fifteen days.  He alleges he was housed in a "6'x8" cell without windows, without a mattress, without access to a telephone, without recreation of any kind, and without access to the Court."  Def's Mot. Dep. at 14-15.

### ii.     Sanilac Jail Episode 1

Defendant says officials transferred him to Sanilac County Jail on December 7, 2005. He alleges that he experienced the following conditions: (1) low quality breakfasts and no lunch or dinner for the first three days of incarceration; (2) inadequate law library facilities; (3) prohibition of contact visits with his wife (the jail maintains a no contact policy); (3) confinement to a small cell without indoor or outdoor recreation; and (4) failure to respond to his written grievances.

### iii.    Wayne County Jail Episode 2

Defendant says officials transferred him to Wayne County Jail on June 28, 2006. He alleges he was: (1) denied access to the law library; (2) given one towel and denied a washcloth; (3) intentionally placed in danger of violent retaliation by prison inmates who threatened him after prison officials blamed Defendant for his section's denial of access to the phones (a different inmate was previously killed for similar conduct); (4) left with a broken toothbrush after a search of his cell; (5) detained in a cold cell for 5-6 days; (6) on at least one occasion forced to choose between the law library and recreation; (7) subjected to an inadequate law library without access to federal law materials; (8) denied a change of clothes; (9) forced to leave his personal belongings behind when transferred (although the Court notes they were returned to him when he returned to Wayne County); (10) struck by a prison guard for complaining about transfer without his personal belongings; and (11) never given a response to his many written grievances.

### iv.    Oakland County Jail

Defendant says he was transferred to Oakland County Jail on August 25, 2006.

He complains he was: (1) initially held in an overcrowded cell with several inmates where he was forced to lay on pure concrete; (2) refused medical treatment for an inflamed shoulder; (3) denied a request to talk to a jail supervisor; and (4) told by a Sergeant to whom he attempted to complain that he should talk to the same deputies Defendant says refused to acknowledge his complaints and requests.

### v.     Wayne County Jail Episode 3

Defendant acknowledges his property was returned to him after he was transferred back to Wayne County on August 28, 2006.  After his return, he alleges he was: (1) given a towel as a blanket; (2) told to remove a sheet he had hung at the head of bed for privacy and threatened with retaliation by other inmates after Defendant failed to comply with orders to remove it, which resulted in collective punishment of his residential unit; (3) subjected to cells with insect vermin; (4) assaulted by a deputy on January 10, 2007, yelled at after requesting medical attention, and again yelled at after attempting to secure the assaulting officer's name; (5) transferred to the mental health ward and put on suicide watch after staff falsely reported he said he would kill himself (in retaliation for complaining about the presence of roaches and spiders in his cell); and (6) erroneously charged four prison booking fees.  *See* Def's Mot. Dep. at 39-42.

### vi.     Grievances

Defendant states he filed grievances for these claims, and includes a grievance log documenting submission of these grievances.

### 3.     Defendant is Not Entitled to a Downward Departure on Account of Pre-Trial Conditions of Confinement

Even accepting Defendant's allegations as true, with the exception of the alleged retaliatory designation to suicide watch, these allegations are not sufficient to warrant a downward departure. While not pleasant, Defendant's pre-trial conditions of confinement in state facilities were not qualitatively different from federal facilities, to such an exceptional or extraordinary degree, that they warrant a departure under § 5K2.0.

As described by the Seventh Circuit in *United States v. Ramirez-Gutierrez*, the circumstances where the motion was granted are more extreme than Defendant's:

> Ramirez-Gutierrez complained that he was unable to obtain care for his broken tooth, lived in poorly ventilated quarters, and was given inadequate opportunity to exercise during his 2 1/2-month detention. In contrast, in *Pressley*, the defendant spent six years in pre-sentence confinement, five years of which he was subjected to 23-hour-a-day lockdown and was not allowed outside. And in *Carty*, the defendant was detained eight months in a Dominican prison, where he was held in an unlit four-by-eight-foot cell with three or four other inmates, had no access to running water, paper, pens, newspaper, or radio, and was allowed only one phone call per week. Ramirez-Gutierrez's relatively brief confinement, while unpleasant, does not compare. And, like the defendant in *Dyck*, he presented no evidence to suggest that the conditions were "so substandard or onerous" as to warrant special consideration by the district court. Absent truly egregious conditions, the pre-trial confinement of Ramirez-Gutierrez raises neither a meritorious nor a substantial issue for sentencing purposes.

*Ramirez-Gutierrez*, 503 F.3d at 646 (internal citations omitted) (citing *United States v. Dyck*, 334 F.3d 736, 741 (8th Cir. 2003). Indeed, "[t]he cases in which downward departures have been granted involve long periods of incarceration in deplorable conditions that typically include situations where the inmate was *subjected to physical abuse and/or sexual abuse while imprisoned*." *Isaza* , 2007 U.S. Dist. LEXIS 55871, at *9 (emphasis added) (citing *United States v. Rodriguez*, 213 F. Supp. 2d 1298 (M.D.

Ala. 2002) (granting downward departure where defendant was raped by a prison guard); *Francis*, 129 F. Supp. 2d 612 (granting downward departure where inmate was a victim of attempted knife slashing, was repeatedly threatened during 13 months of incarceration, and experienced extraordinary stress and anxiety); *United States v. Mateo*, 299 F. Supp. 2d 201, 205 (S.D.N.Y. 2004) (downward departure based on pre-sentence confinement conditions where defendant was subjected to sexual abuse by prison guard and gave birth at prison without medical attention).

In *United States v. Sutton,* the court noted "unusual pretrial confinement, . . . either in length or severity of condition" can support a downward departure. *Sutton*, 973 F. Supp. at 494. Noting the need to have evidence in the form of comparative data to determine whether conditions were "atypical" as compared to jails in other jurisdictions, the court concluded that the defendant "produced [no] evidence that th[e] delay [was] in any way unusual in comparison with the delays experienced by other defendants housed elsewhere" nor did he "produce[] any evidence indicating that the conditions . . . [were] atypical as compared with jails in other jurisdictions. *Id.* at 494-495; *see Isaza*, 2007 U.S. Dist. LEXIS 55871, at *10 ("In order for the court to conclude that the delay [or conditions] experienced w[ere] unusual so as to transform the defendant's situation into an atypical case, the court must be provided with some comparative data, for example a comparison of the delays other pretrial detainees experienced."). The Court concluded his circumstances were not sufficiently atypical to take the case out of the Guidelines. *Sutton*, 973 F. Supp. at 494.

Defendant submits a lengthy personal assessment of the inequities of his state

detention in comparison to the conditions of his previous federal detention, which he describes as quite adequate.  He provides no other comparative data.

Any argument relying on the length of time in pre-trial confinement is undercut by the fact that Defendant significantly delayed his sentencing through numerous motions. *See Sutton*, 973 F. Supp. at 494.  Nor are the great majority of conditions Defendant narrates so unusual, qualitatively different, or atypical in comparison to federal facilities that they warrant the highly infrequent grant of a departure on a ground unmentioned by the Guidelines.

Although the allegation of retaliatory placement on suicide watch is potentially of a different ilk, Defendant did not offer the Court enough information about the circumstances of the incident to warrant a departure.

The Court declines to depart downward on this ground.

## VI.    § 3553(a)

## 1.    Introduction

The Court received a Supplemental Pro Se Sentencing Memorandum from Defendant and a Sentencing Memorandum from counsel.

Defendant and counsel ask the Court to consider the following under § 3553(a): (1) family ties and responsibilities, including the "tremendous adverse financial consequences that have befallen [his] family as a result of this case;" (2) legitimate employment including work as an inventor with patent pending status on many ideas, self-employment as investor in real estate, and work as an electronic musician

producing music for local and international records companies; (3) the collateral consequences of his pre-trial incarceration and conviction including the loss of his home, loss of investment properties, tax foreclosures, and the relocation of his children to the western region of the country; (4) Defendant's victimization of "five deficient attorneys who sought only to exploit this defendant," which "forced" Defendant, "a layman to all jurisprudence" to "attempt to represent himself;" and (5) "[t]he originators of the mortgage transactoons [sic] and credit card schemes and all other co-conspirators also received portions of the calculated loss in this case." Pro Se Sent. Mem. at 5.

Defendant concludes his Supplemental Pro Se Sentencing Memorandum by requesting a sentence of time served after a downward departure under § 5K2.0. He also requests self-surrender to the BOP to improve his security classification when admitted, and seeks a recommendation by the Court that he serve the remained of any prison term at a Residential Re-Entry Center. He supports these requests by pointing the Court to the non-violent nature of the offense, his non-violent history, his condition of confinement in county jails, his "spotless" record at a federal facility and his successful completion of the "Success After Prison" program at the Federal Detention Center at Milan, MI.

## 2. Generally

The Court must be sure that the sentence imposed is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Pre-*Booker*, the Sentencing Guidelines limited the type of factors a district court could consider in fashioning an appropriate sentence,

29

and mandated the extent to which a factor had to be present to warrant a departure from the Guidelines range. *Booker,* 543 U.S. 220; *see United States v. Crouse,* 145 F.3d 786, 789-790 (6th Cir. 1998). *Booker*, however, rendered the Guidelines advisory. Now, sentencing courts must consider the applicable Guidelines range and the additional statutory concerns set forth in 18 U.S.C. § 3553(a). *Booker,* 543 U.S. at 245-246. After considering these factors, the Court must impose a sentence that takes into account the statutory purposes in § 3553(a)(2). *Id.* These § 3553(a) statutory considerations and subsection (2) purposes include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence . . . to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment, to deter similar criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with training, medical care, or other treatment;
>
> (3) the kinds of sentences available;
>
> (4) the applicable advisory Guidelines range;
>
> (5) relevant policy statements by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentenc[ing] disparities; and
>
> (7) the need to provide restitution to . . . victims.

*United States v. Cousins*, 469 F.3d 572, 576 (6th Cir. 2006) (emphasis added) (quoting 18 U.S.C. § 3553(a)) (internal quotations omitted)).

In the recent decision of *Gall v. United States*, the Supreme Court again clarified the appropriate approach to the review of district court sentences. *Gall v. United States*, 128 S. Ct. 586 (2007). District court sentences must be reasonable, and are subjected to "'reasonableness' review" by the courts of appeals. *Id.* at 594. This review applies "the familiar abuse-of-discretion standard of review." *Id; see also United States v.*

*Vonner*, 516 F.3d 382, 385-386 (6th Cir. 2008) (holding that district courts must ask

whether the defendant has any objections to the sentence to ensure abuse-of discretion

review).

"[A] district court should begin all sentencing proceedings by correctly calculating

the applicable Guidelines range." *Id.* at 596-597 (citing *Rita v. United States*, 127 S. Ct.

2456, 2480 (2007)). "[T]he Guidelines should be the starting point and the initial

benchmark." *Id.* at 596. "[A]fter giving both parties an opportunity to argue for whatever

sentence they deem appropriate, the district judge should then consider all of the §

3553(a) factors to determine whether they support the sentence requested by a party.

*Id.* However, "[i]n so doing, he may not presume that the Guidelines range is

reasonable." *Id.* "The Guidelines are not the only consideration . . . ." *Id.* (citing *Rita*,

127 S. Ct. at 2480). "He must make an individualized assessment based on the facts

presented. If he decides that an outside-Guidelines sentence is warranted, he must

consider the extent of the deviation and ensure that the justification is sufficiently

compelling to support the degree of the variance." *Id.* "[A] major departure should be

supported by a more significant justification than a minor one. After settling on the

appropriate sentence, he must adequately explain the chosen sentence to allow for

meaningful appellate review and to promote the perception of fair sentencing." *Gall*,

128 S. Ct. at 596-597.

Correcting the misapplication of its precedent by the Eight Circuit, the Supreme

Court held:

In reviewing the reasonableness of a sentence outside the Guidelines range,

> appellate courts may . . . take the degree of variance into account and consider the extent of a deviation from the Guidelines. We reject, however, an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.

*Id.* at 15-16. The Supreme Court holding overturns one frequent practice of the Sixth Circuit: the use of a mathematical proportionality analysis to evaluate the appropriateness of variances from the Guidelines. *See United States v. Bolds*, 511 F.3d 568, 580-581 (6th Cir. Dec. 20, 2007); *see e.g., United States v. Cherry*, 487 F.3d 366, 372 (6th Cir. 2007); *United States v. Davis*, 458 F.3d 491, at 496-497 (6th Cir. 2006); *Husein*, 478 F.3d at 333; *United States v. Hairston*, 502 F.3d 378, 383 (6th Cir. 2007) (citing *United States v. Poynter*, 495 F.3d 349 (6th Cir. 2007) (collecting cases)); *Poynter*, 495 F.3d at 353; *United States v. Borho*, 485 F.3d 904, 912 (6th Cir. 2007).

Before *Gall*, the Sixth Circuit often utilized this rigid mathematical proportionality analysis to evaluate the substantive reasonableness of variances (and likely departures) from the Guidelines range. Following *Gall*, the Sixth Circuit's use of a rigid mathematically based proportionality review is no longer valid. *Gall*, 128 S. Ct. at 596-596; *Bolds*, 511 F.3d at 581.

The Supreme Court also specifically overruled the requirement that "extraordinary" circumstances exist before the grant of a variance from the Guidelines range. *See Gall*, 128 S. Ct. at 595. Although the Sixth Circuit has previously discussed whether the factors articulated in support of a variance are "extraordinary," it did not utilize the rigid approach specifically overturned by the Supreme Court. Instead, the

Sixth Circuit referenced the "extraordinary" nature of the relevant factors in the context of "extraordinary" variances, not all variances.  *See e.g.,Borho*, 485 F.3d at 912-914; *United States v. Smith*, 503 F.3d 463 (6th Cir. Oct. 29, 2007); *see also United States v. Teeple*, No. 06-1114, 2007 U.S. App. LEXIS 25521, at *13 n.1 (6th Cir. Oct. 9, 2007) (unpublished) (noting forthcoming *Gall* decision); *United States v. Holden*, No. 06-20345, 2007 U.S. Dist. LEXIS 42722, at *8-9 (E.D. Mich. June 13, 2007) (Roberts, J.) ("While not 'extraordinary,' Holden's ability to maintain stable employment does indicate that she is attempting to lead a positive life. Pursuant to § 3553(a), this factor weighs in favor of imposing a sentence outside the Guideline range."); *but see Borho*, 485 F.3d at 914.  As a result, the Sixth Circuit has now made crystal clear that it "[did] not, and indeed after *Gall* cannot, 'require 'extraordinary' circumstances to justify a sentence outside the Guidelines range.'"  *United States v. Bolds*, 511 F.3d at 580-581 (quoting *Gall*, 128 S. Ct. at 595).

The day after *Gall,* the Sixth Circuit issued *United States v. Lalonde*, in which it reviewed a sentence in light of *Gall.*  *United States v. Lalonde*, 509 F.3d 750 (6th Cir. 2007).  This opinion reiterated that "when a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it."  *Id.* at 770 (quoting *United States v. Jones*, 489 F.3d 243, 252 (6th Cir. 2007)).  In addition, after consideration of these arguments, "the district judge cannot simply rely upon the advisory Guidelines range, but rather 'must make an individualized assessment based on the facts presented.'"  *Id.* (quoting *Gall*, 128 S. Ct. at 596-597).

In the Sixth Circuit, sentences within the Guidelines range are presumptively reasonable on review. *Cousins*, 469 F.3d at 576; *see also Rita*, 127 S. Ct. at 2462 (holding courts of appeal may apply a presumption of reasonableness when reviewing district court sentence within the Guidelines); *United States v. Crowell*, 493 F.3d 744, 751 (6th Cir. 2007) (quoting *United States v. Dexta*, 470 F.3d 612, 616 (6th Cir. 2006)) ("[Defendant] contends the sentence is longer than it need be, but the 'mere allegation that the sentence imposed is greater than necessary to achieve the goals of punishment in § 3553(a) is insufficient to rebut the presumption of reasonableness.'). Sentences outside the range must survive review without a rebuttable presumption of reasonableness. *Rita*, 127 S. Ct. at 2473; *Husein*, 478 F.3d at 332; *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). However, the Court must be cognizant when determining a sentence that it "may not presume that the Guidelines range is reasonable." *Gall*, 128 S. Ct. at 591 (citing *Rita* 127 S. Ct. 2456). Although it refers to a procedural defect as a "procedural error" instead of "procedural reasonableness," *Gall* generally comports with the Sixth Circuit's previous distinction between two separate types of reasonableness: procedural and substantive. *See Gall,* 128 S. Ct. at 597-598*; Lalonde*, 509 F.3d at 769 (citing *Gall*, 128 S. Ct. at 597; *United States v. Thomas*, 498 F.3d 336, 339 (6th Cir. 2007); *Jones*, 489 F.3d at 250)) ("Booker, which, as the Supreme Court has recently confirmed in *Gall,* contains both procedural and substantive components.") (internal citations omitted); *Davis*, 458 F.3d at 495.

The Sixth Circuit held a sentence procedurally unreasonable "if the district judge fail[ed] to 'consider' the applicable Guidelines range or neglect[ed] to 'consider' the other

factors listed in 18 U.S.C. § 3553(a), and instead simply select[ed] what the judge deems an appropriate sentence without such required consideration."  *Husein*, 478 F.3d at 325 (citing *United States v. Caver*, 470 F.3d 220, 248 (6th Cir. 2006)).  The Sixth Circuit has also found a sentence procedurally unreasonable when "the district court did not appreciate the non-mandatory nature of the guidelines" or "did not correctly calculate the sentencing range under the guidelines."  *Davis*, 458 F.3d at 495.  In addition, "satisfaction of the procedural reasonableness requirement does not depend on a district court's engaging in . . . ritualistic incantation of the relevant § 3553(a) factors," but does require that the "record [demonstrate] that [it] addressed the relevant factors in reaching its conclusion."  *Husein*, 478 F.3d at 326 (citing *United States v. Dexta*, 470 F.3d 612, 614-15 (6th Cir. 2006)).

*In Gall*, the Supreme Court described a procedural error as including (but apparently not limited to) "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range."  *Gall,* 128 S. Ct. at 597.

In contrast, "[a] sentence is substantively unreasonable if the district court 'selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor.'"  *Husein*, 478 F.3d at 332 (quoting *Caver*, 470 F.3d at 248)*; United States v. Ming Liou*, 491 F.3d 334, 337 (6th Cir. 2007).  The Sixth Circuit also recently

held that a Court may not rely on the perceived innocence of a defendant if they have been convicted by a jury of the crime. *See United States v. Hunt*, No. 06-6300/6301, 2008 U.S. App. LEXIS 7767, at *32-33 (6th Cir. Apr. 11, 2008) ("The district court appears to have relied in substantial part on its doubt that Hunt intended to commit fraud. If the district court did so rely, then it is necessary for us to remand under the abuse-of-discretion scope of review.").  Even if "the Guidelines were properly applied and the district court clearly considered the § 3553(a) factors and explained its reasoning, a sentence can yet be unreasonable."  *United States v. Husein*, 478 F.3d at 332.

The Court must also consider the prohibited or discouraged nature of a factor under the Guidelines.  Post-*Booker* § 3553(a)(5) directs a sentencing court to consider policy statements issued by the Sentencing Commission, which necessarily includes consideration of the "discouraged" or "prohibited" status of a factor under the Guidelines.  The Sixth Circuit previously held that "in an appropriate case, a trial court, in exercising the 'broad discretion' that *Booker* gives it 'in imposing a sentence within a statutory range,'" has "'a freer hand'" in taking these factors into account.  *Davis*, 458 F.3d at 498 (internal citations omitted) (quoting *Booker*, 543 U.S. at 233); *United States v. Smith*, 445 F.3d 1, 5 (1st Cir. 2006).  The recently decided *Gall*, and the accompanying Supreme Court decision in *Kimbrough* v. *United States*, now make manifestly clear that the policy statements of the Guidelines are just one of many statutory factors to consider when determining a sentence under § 3553(a).  *See Gall*, 2007 U.S. LEXIS 13083, at *22 n.6; *Kimbrough v. United States*, No. 06-6330, 128 S.

Ct. 558, 577 (2007) (Scalia, J., concurring) ("[T]he district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines.").

While the Court discusses the contours of reasonableness review as a point of reference, it remains cognizant that "reasonableness" is not a burden of proof, and "applies only on appellate review. The sentencing court does not enjoy the presumption's benefit when determining the merits of the arguments by prosecution or defense that a Guidelines sentence should not apply." *Rita*, 127 S. Ct. at 2465.

### 3. Defendant's Arguments

### A. Family Ties and Responsibilities

Defendant points to his family ties and responsibilities in support of a variance or modification of his sentence. He notes his role as a supportive father and husband.

Defendant married his wife, Erin Hill, in November 2004. She is employed as a nurse and has two children (ages 11 and 16) born prior to her marriage to Defendant.

Defendant has five children. Valente and Velicia, ages 15 and 14 respectively, were born to his relationship with Amy Velez. He obtained custody of both children in 1993. As a result of Defendant's detention for his offense, the children went to live with Defendant's mother in January of 2006. In April 2007, Velicia went to live with Defendant's half-sister. According to Defendant, he signed guardianship documents approving these arrangements. Although he has no current child support obligation to these children, Defendant previously accumulated $27,518 in arrearage.

Defendant's third child, Amiya Alexander, age 8, was born to his relationship with Teberah Alexander. She resides with her mother in Southfield. He reports a cordial relationship with Ms. Alexander, has no current child support obligation, and is not in arrearage.

Probation was advised by the Oakland County Friend of Court that Defendant has two additional children: (1) Katelyn Thomas, age 3, born to Katrina Douglas; and (2) Khari Perkins, age 16, born to Lisa Larkin (Larkin is named in Count I of the Third Superceding Indictment and is identified as a "shopper" in the offense). Defendant has a monthly child support obligation of $384 for Khari Perkins, and is currently $34,561 in arrearage. He does not have a child support obligation for Katelyn Thomas.

Defendant provides several rationales why his family ties and responsibilities warrant a variance or reduced sentence: (1) he is a caring husband and father; (2) he had been attending church with his family every Sunday until he was detained; (3) after meeting and marrying his wife in 2004 he has cared for her and her two children "without conditions;" (4) as a result of the offense his children will not be attending college as planned; (5) "the tremendous adverse financial consequences that have befallen . . . [Defendant's] family as a result of this case[,]" including $118,620.27, "which . . . will be ordered as restitution, notwithstanding the fact that $53,000.00 must be paid a second time to Ocwen Bank as well as $21,000.00 being paid twice as well." Pro Se Sent. Mem. at 5. He also notes his conviction resulted in the relocation of his children.

Defendant's argument fails to convince the Court that a variance is warranted.

Whatever strength his argument might have is undercut by his failure to meet his previous and ongoing child support obligations. It appears he did not even acknowledge the existence of two of his children (Katelyn Thomas and Khari Perkins) to Probation. Indeed, one of the children he did not acknowledge (Katelyn Thomas, age 3) was born after (or immediately before) his marriage to his wife in November 2004, and goes unmentioned in his *Pro Se* Memorandum.

It is true that Defendant's absence resulted in the relocation of two of his children to Texas to live with his mother. In addition, it is clear that he previously contributed significantly to the members of his own and adopted families. His wife says in a letter to the Court that she has been forced to take on two jobs in his absence. It is also commendable that Defendant took formal custody of two of his children.

Yet, the Court is not convinced by Defendant's *Pro Se* Memorandum that his presence will significantly benefit the children over whom he had custody prior to his detention, his wife's children, or his additional children. Defendant amassed a significant criminal record and his crime is undeterred by custodial terms. His income, including his purchase and sale of homes, has been derived, in part, from illegal activities. Moreover, to the extent the Court might have been convinced Defendant's family ties and responsibilities to the two children formerly in his custody warrant a variance, Defendant cannot reasonably point to some children, but conveniently ignore others, when seeking a variance because of his so-called role as a supportive father.

Lastly, although Defendant eventually took custody of Valente and Velicia, he did so only after falling $27,518 in arrearage. This arrearage may have contributed to their

mother's inability to support them in the first place. The Court cannot justify reducing Defendant's sentence in light of his continuous criminal endeavors and failure to support - - and acknowledge - - several of his children.

Counsel's Memorandum independently points to three character letters attached to his memorandum. Defendant's wife says Defendant is a changed man, who does charitable deeds in the community. A representative of Dunamis Outreach Ministries, Assistant Pastor Tyrone Temple, also testifies to Defendant's "tremendous change" (although it is hard to imagine how he has observed this change during Defendant's incarceration).

The Court's attention is drawn to a letter submitted by Defendant's mother, Rosalind Harris. She is the current caretaker of two of Defendant's children and says they are very depressed and sad without him. She also notes one of Defendant's children is "fifteen, weighs 230 pounds, at 5' tall . . . is pre-diabetic, experiencing eye problems, and complains of a headache daily, . . . [and] is . . . unhappy, [and] unmotivated to stay on a proper eating regime, or exercise regularly." Despite these unfortunate conditions, the Court cannot identify how a shorter sentence will remedy the majority of Defendant's daughter's ailments.

Despite counsel's arguments, the Court is undeterred in its finding that these circumstances do not warrant a variance or modification of sentence based on family ties and responsibilities.

**B.    Employment History**

Defendant points to his employment history as a ground for a variance or adjustment of his sentence.  Probation reports that from 1997 until his arrest for his offense Defendant was self-employed.  He bought and refurbished homes or used them as rental properties.  He estimates his real estate endeavors generated $3,000 to $4,000 each month.

Due to the nature of his employment Probation was unable to verify employment information.  Defendant told Probation his wife recently filed several years of tax returns.  Probation requested Defendant provide them to counsel and Probation.  However, Probation did not receive the information by the date of the revision of the PSIR on June 2, 2008.

According to Defendant, he was additionally employed for three months by an auto parts supplier in Royal Oak, Michigan at a wage of $7.50 or $7.80 an hour.  A 1997 PSIR says Defendant was employed at one point by Page Link Communications Company in Detroit as a salesman where he received $200 a week.  Probation was unable to verify either employment.

Defendant's *Pro Se* Memorandum cites the following employment/sources of income: (1) self-employment as a real estate investor; (2) an inventor and holder of patent pending status "on many ideas;" and (3) an electronic musician who produces music.

This employment record is not sufficient to support a variance or modification of sentence.  It appears Defendant had some legitimate income from his self-employment, but it is also clear from his criminal record he relied significantly on his criminal activities

for income.

Although Defendant insists his real estate transactions did not involve fraud, he states in his *Pro Se* Memorandum that he should receive a variance or modified sentence because some of the mortgage originators were also responsible for the loss, implicitly conceding he engaged in real estate fraud. Moreover, Defendant's Rule 11 stipulates to relevant conduct, which includes fraudulent real estate transactions.

The Court finds Defendant's employment history does not merit a variance or adjustment of his sentence.

## C.      Collateral Consequences

Defendant points to the loss of his home, loss of investment properties, tax foreclosures, and the relocation of his children to the western region of the country. Defendant does not explain under which provision of § 3553(a) the Court should consider these unfortunate effects of his incarceration. The Court declines to grant a variance or modify his sentence on these grounds.

## D.      Defendant's Victimization By "Five Deficient Attorneys Who Sought Only to Exploit [D]efendant," Which "Forced" Defendant, "a Layman to All Jurisprudence," to "Attempt to Represent Himself;"

Defendant does not elaborate on his accusations regarding his five "deficient" attorneys. In any event, his sentencing is not the proper forum for Defendant to attack the adequacy of his previous five attorneys. Nor is Defendant's decision to represent himself *pro se* relevant to his sentence under § 3553(a). The Court declines to grant a variance or modify his sentence on this ground.

**E.     Originator Culpability**

Defendant argues his sentence should be modified because the originators of the mortgage transactions and the participants in the credit card scheme are not required to provide restitution for any of the loss amount they received.  The responsibility of others for assisting in the origination of fraudulent loans does not mitigate Defendant's liability.  Although the circumstances of the offense are relevant under § 3553(a)(1), the Court is not convinced these circumstances merit a modification of his sentence.  This view is strengthened by the fact that despite his displeasure with the restitution, Defedant stipulated to a specific amount in his Rule 11.

The need to avoid unwarranted sentencing disparities for defendants with similar criminal history records who engaged in similar conduct is a consideration under § 3553(a)(6), but Defendant does not provide enough information about the other participants for the Court to grant a variance in light of unwarranted restitution disparities.  Defendant does not even establish that the Government indicted the originators of the loans.  Moreover, even if they were criminally charged, as stated in subsection (a)(7), a separate and equally important consideration under § 3553(a) is the need *to provide* restitution to victims.

The Court declines to grant a variance or modify Defendant's sentence on this ground.

**F.     Pre-Trial Detention Conditions Under § 3553(a)**

Although Defendant's Motion was for a downward departure under § 5K2.0 for

pre-trial detention conditions, his *Pro Se* Memorandum may be read liberally to argue for consideration of this factor under § 3553(a). The Court does not find that § 3553(a) merits a variance because of Defendant's pre-trial conditions of confinement.

**G.    Physical Health**

Defendant reported to Probation that he was shot twice in November 1993. Probation verified this information and Defendant's treatment at Beaumont Hospital in Royal Oak, but Holy Cross Hospital in Detroit was unable to verify his treatment because it no longer has records from that time period. He received wounds in the buttocks and thigh, and reported to Probation that he occasionally experiences numbness, pain, and weakness in his right leg.

Defendant also reports he was stabbed in the cheek in 2000, and suffered permanent nerve damage. Probation was unable to verify this incident from Providence Hospital in Southfield; no records were found. Defendant reports he occasionally experiences pain and discomfort due to this injury, and takes over the counter pain killers.

Although these injuries are part of Defendant's history and characteristics under § 3553(a)(1), the Court does not find they support a variance or modification of Defendant's sentence.

**H.    Non-Violent Offense and Non-Violent History**

Plaintiff suggests that he should receive a variance or modified sentence on account of the non-violent nature of his offense. While it is true the nature of the

offense is a relevant consideration under § 3553(a)(1), Defendant offers no reason why the non-violent nature of his crime should result in a decreased or modified sentence. The Guidelines for his crime contemplate their non-violent nature. Although his crimes did not result in physical injuries, they nonetheless had a detrimental effect on the victims of the offense. The Court is not convinced the non-violent nature of his crime should result in a variance or reduction of sentence under § 3553(a).

I.      **"Spotless" Record at a Federal Facility & Successful Completion of the "Success After Prison" Program**

Defendant's reliance on his "successful" completion of the "Success After Prison Program" is ironic, to the extent that whatever it taught him, has not actually helped him succeed after prison. Second, Defendant offers nothing to support his "spotless record" at a federal facility. Third, Defendant cites nothing supporting the proposition that the Court should take his positive conduct during previous incarcerations into account, especially when followed by new convictions.

The Court is not convinced these grounds support a variance or modification of his sentence.

4.      **Counsel's Arguments**

A.      **Generally**

The primary thrust of counsel's argument is that Defendant is intent on changing his criminal ways.

B.      **Nature and Circumstances of the Offense**

Counsel acknowledges Defendant's offense is serious, but emphasizes its non-

violent nature.

## C.     History and Characteristics of the Defendant

Counsel informs the Court "Defendant deeply understands the price he has paid for his years of criminal activity and to his credit is determined to abandon that life style and attempt to make amends for the harm his actions have inflicted." Counsel's Sent. Mem. at 4. Counsel's statements simply do not square with the reality of the record. Not only does counsel not point to anything besides his personal evaluation of Defendant's state of mind in support of his assertions, the record could not more strongly contradict counsel's viewpoint.

Defendant has amassed a significant criminal record. Although this record does not speak to Defendant's current state of mind, it does speak to the likelihood Defendant has decided to change his ways. More importantly, nowhere in any of the many documents the Court received from Defendant does he voice remorse, or otherwise indicate he is dedicated to turning his life around in the manner described by counsel. Indeed, much of Defendant's Motion *Pro Se* Memorandum and accompanying exhibits contain statements that detail the mind of a defendant indignant at having to serve a sentence and annoyed at the consequences of his own criminal actions. A cogent example is Defendant's voiced irritation at paying restitution for his crimes.

## D.     Traditional Purposes of Punishment

## i.     Generally

Counsel argues that the factors related to the traditional purposes of punishment

under § 3553(a)(2) support a variance. These purposes include the need for the sentence:

> (1) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment;
> (2) to deter similar criminal conduct;
> (3) to protect the public from further crimes of the defendant; and
> (4) to provide the defendant with training, medical care, or other treatment;

## ii. Retribution

Counsel acknowledges that Defendant's crime is serious, but emphasizes that it is only one of several factors and a "non-assaultive" offense. Counsel also notes Defendant's argument requesting a downward departure based on pre-trial conditions.

The Court rejects these arguments, as discussed above.

## iii. Deterrence

Counsel contends a sentence of 46 months would be sufficient to ensure Defendant does not engage in further criminal conduct. In light of Defendant's collection of several short custodial sentences, the Court is convinced that Defendant will only respond to a significant sentence. In addition, it is important to deter others from committing the same offense.

## iv. Protection of the Public

Counsel argues a sentence of 46 months would be sufficient to deter Defendant from future crimes. He reaches this conclusion because of "Defendant's sincere resolve to extricate himself from the criminal lifestyle." As previously discussed, the Court is not

convinced Defendant has a sincere resolve to change his lifestyle, and feels a longer sentence is appropriate to protect the public from possible future crimes.

### v.    Rehabilitation

Counsel argues that Defendant could not be more aware of the destructive consequences of his actions.

While Defendant may regret the consequences of his incarceration on his life, he does not appear to appreciate the effects of his crimes on others.  Thus, the Court is not convinced, as counsel argues, that Defendant is "rehabilitated."  However, as it is required to do under § 3553(a)(2), the Court will attempt to ensure that his sentence provides Defendant with training, medical care, or other treatment.

## VII.    SENTENCE IMPOSED

Based on the foregoing, the Court sentences Defendant to 57 months.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  August 7, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 7, 2008.


s/Carol A. Pinegar

Deputy Clerk