UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff(s),        CASE NUMBER: 05-80949
                                    HONORABLE VICTORIA A. ROBERTS

v.

SHERMAN PEGROSS,

        Defendant(s).
_____/

## ORDER DENYING DEFENDANT'S MOTION FOR VOLUNTARY JUDICIAL WITHDRAWAL

**I. INTRODUCTION**

Defendant asks the Court to voluntarily withdraw from considering his case under 28 U.S.C. §§ 144 and 455 (Doc. #161). Defendant's motion is **DENIED**.

**II. BACKGROUND**

Defendant was arrested on November 22, 2005, pursuant to a ten-count indictment. The Government filed three superseding indictments. On June 29, 2007, pursuant to a Rule 11 plea agreement, Defendant pled guilty to one count of Access Device Fraud in violation of 18 U.S.C. § 1029(a)(1)(B).

On August 29, 2007, Defendant filed a motion to withdraw his guilty plea. The Court denied it after a hearing on October 4, 2007. Eventually, on August 5, 2008, the Court sentenced Defendant to 57 months in accordance with his plea agreement. Now pending before the Court are Defendant's motion to vacate his sentence and a Habeas Corpus action under 28 U.S.C. § 2255.

Defendant's motion for voluntary withdrawal is divided into three parts. The

motion itself describes two grounds upon which Defendant requests the Court to recuse itself.  There follows a 28 U.S.C. § 144 Affidavit, which incorporates the motion's allegations.  Finally, Defendant attaches a copy of a Complaint for Judicial Misconduct dated October 23, 2008 ("the Complaint"), which he filed with the Judicial Council of the Sixth Circuit pursuant to Rule 1(b) of the Rules Governing Complaints of Judicial Misconduct or Disability.  This Complaint states additional reasons for the Court to withdraw from Defendant's case.

The Court addresses the allegations contained in both Defendant's motion and in his Complaint.

### III. STANDARD OF REVIEW AND APPLICABLE LAW

"To promote public confidence in the impartiality of the federal judicial system," *Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir. 1980), federal law requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," or "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  28 U.S.C. § 455(a), (b)(1).  For its part, § 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

While § 144 "appears to require automatic disqualification once the affidavit is filed, a district court judge has a duty to examine the affidavit to determine whether it is timely and legally sufficient."  *In re City of Detroit*, 828 F.2d 1160, 1164 n.2 (6th Cir. 1987) (*citing Berger v. U.S.*, 255 U.S. 22, 32 (1921)).

2

Contrary to § 144, in which a party affidavit triggers the examination of whether recusal is justified, under § 455, the onus is on the judge to identify factors that could put the court's impartiality in doubt. *See Liteky v. U.S.*, 510 U.S. 540, 548 (1994); *U.S. v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983) ("The difference between sections 144 and 455 is that section 455 is self-executing, requiring the judge to disqualify himself for personal bias even in the absence of a party complaint"). This distinction aside, §§ 144 and 455 are sister provisions pertaining to the same subject, and must be construed *in pari materia* with one another. *Green v. Nevers*, 111 F.3d 1295, 1303 (6th Cir. 1997); *Black's Law Dictionary* 352 (2d pocket ed. 2001).

Under both § 144 and § 455, recusal must be predicated upon "extrajudicial conduct rather than on judicial conduct." *Easley v. University of Michigan Board of Regents*, 853 F.2d 1351, 1355 (6th Cir. 1988) (*quoting Story*, 716 F.2d at 1091). Furthermore, a disqualifying bias "must be a personal bias as distinguished from a judicial one[,] arising out of the judge's background and association and not from the judge's view of the law." *Id.* at 1356 (*quoting Story*, 716 F.2d at 1090) (other internal quotations omitted). As the Sixth Circuit explained in *Wheeler v. Southland Corp.*,

> "Personal" bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases. Personal bias arises out of the judge's background and associations. The critical test is whether the alleged bias "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case."

875 F.2d 1246, 1251-52 (6th Cir. 1989) (*quoting U.S. v. Grinnell Corp.*, 384 U.S. 563, 583 (1965)) (other internal citations omitted); *see also Liteky*, 510 U.S. at 554-56.

A recusal motion, whether under 28 U.S.C. § 144 or § 455, is committed to the

sound discretion of the district court. *Green*, 111 F.3d at 1303. The court's determination hinges on whether "a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *U.S. v. Hartsel*, 199 F.3d 812, 820 (6th Cir. 1999) (*quoting Hughes v. U.S.*, 899 F.2d 1495, 1501 (6th Cir. 1990), *cert. denied*, 498 U.S. 980 (1990)). This inquiry is an objective one, and "is not based on the subjective view of a party." *Wheeler*, 875 F.2d at 1251. Because judges are presumed impartial, the "substantial burden" of proving bias lies with the party seeking disqualification. *Scott v. Metropolitan Health Corp.*, 234 Fed. Appx. 341, 352 (6th Cir. 2007) (*quoting U.S. v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006)). Where the question is close, prudence dictates that a judge recuse himself. *U.S. v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993) (*citing Roberts*, 625 F.2d at 129). However, "a federal judge has a duty to *sit* where *not disqualified* which is equally as strong as the duty to *not sit* where *disqualified*." *Laird v. Tatum*, 409 U.S. 824, 837 (1972) (separate memorandum of Rehnquist, J.) (emphasis in original) (collecting cases).

On appeal, the Sixth Circuit reviews the district court's determination under the familiar abuse of discretion standard, reversing only when it is left with a "definite and firm conviction that the trial court committed a clear error of judgment." *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714, 720 (6th Cir. 2001) (*quoting Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)).

IV. **ANALYSIS**

The Court reviews all of Defendant's grounds for recusal, whether raised in his motion or in his Complaint to the Judicial Council. Before considering the merits of his motion, the Court addresses factual inaccuracies in Defendant filings.

## A. Defendant's Motion for Voluntary Withdrawal

Defendant's motion asserts two main grounds for recusal. First, he claims the Court had prior, extrajudicial information about him which prevents it from acting in an impartial manner. Second, Defendant alleges that the Court's handling of his pretrial motions is a reflection of its bias against him. Defendant's factual allegations are either inaccurate or false, and do not support an inference of bias.

### 1. Prior Information on Defendant

Defendant claims that my daughter is friends with a woman named Taberah Alexander, who is the mother of one of Defendant's children. Defendant alleges that over the years, Ms. Alexander "has spoken many untruths" to my daughter, including portraying him as "a deadbeat dad and a woman-beater." (Def.'s Mot. ¶ 1.) Defendant claims that as a result of these exchanges, I have acquired "a negative, permanent and prejudicial image" of him. (*Id.*)

Defendant's portrayal of my daughter's relationship with Ms. Alexander is inaccurate. While it is true that my daughter is acquainted with Ms. Alexander, they are not friends. They did attend the tenth through the twelfth grades together and graduated in 1997. To my knowledge, however, my daughter has had virtually no contact with Ms. Alexander since 2000. She has not been in touch with Ms. Alexander to hear "untruths" about Defendant, and she has not imparted any information about Defendant to the Court.

Contrary to Defendant's assertions, the Court did not discover his connection with Ms. Alexander until well after his guilty plea. Defendant pled on June 29, 2007;

however, I did not realize I had prior knowledge about Defendant until I read the Probation Department's PreSentence Investigation Report ("PSIR"), which was originally dated March 27, 2008. This discovery came about only because the PSIR mentions Ms. Alexander's first name, Teberah, which I recognized as unusual; it also states the name of her child. After reading the PSIR, I asked my daughter if she knew the name of Teberah's child. She gave me the same name as listed in the PSIR. I only knew then, that I had met Ms. Alexander when she was in high school, and I remembered speaking about her with my daughter in 2000; my daughter told me then, that Ms. Alexander had been in an altercation with the father of her child, a man whose name I did not know until reading the PSIR.

From this sequence of events, three obvious conclusions arise. First, any prior information the Court had relating to Defendant dates back at least to the year 2000, when I last spoke to my daughter about Ms. Alexander. Second, until I received the PSIR, in March 2008, I had no idea with whom Ms. Alexander had her dispute; Defendant's papers filed in connection with this motion provide far more detail than I ever had concerning his involvement with Ms. Alexander. Third, by the time the Court made the connection between Defendant and Ms. Alexander, he had already pled guilty; in fact, all matters about which Defendant now alleges judicial bias had already been resolved, including his motion to withdraw his guilty plea.

 2. **Review of Pretrial Motions**

Defendant contends that the Court "cursorily reviewed" his pretrial motions and denied them regardless of their merits. (Def.'s Mot. ¶ 2.) In particular, Defendant claims the Court "boldly display[ed] its bias" by ignoring the fact that the prosecution

6

"responded to many of [Defendant's] pretrial motions in an untimely manner, and in some instances, failed to respond all together." (*Id.*)

The Court denies that its review of Defendant's pretrial motions was either cursory or biased. Defendant's case has a convoluted history that required several extensions of filing deadlines. Excluding motions now pending, Defendant filed – and the Court ruled upon – 24 different motions. The Court treated, and continues to treat, Mr. Pegross as it would any other defendant, considering each motion on its merits and ruling accordingly.

### a. Motions Without Government Response

On six occasions, the Court ruled on Defendant's motions without the benefit of a response from the prosecutor. In each case, it was within the Court's discretion to summarily dispose of Defendant's motions.

Defendant filed three pretrial motions for reconsideration (Docs. #12, 84 & 143), to which the Court's Local Rules prohibit responses unless otherwise ordered. E.D. Mich. Local R. 7.1(g)(2). Since the Court did not request responses to Defendant's motions, it did not err in ruling on them without hearing from the Government.

Defendant filed a motion for panel review of his detention (Doc. #55), to which the Government did not respond. This was summarily disposed of as well, since there is no provision in law for "panel review of detention."

Finally, Defendant filed a motion for downward departure on his sentence (Doc. #147), and a month later, a motion for order granting the relief sought in his motion for downward departure (Doc. #148). The Government was not obligated to respond to either motion. The Court denied Defendant's motion for order pending his hearing (Doc.

#150), and ruled on his motion for downward departure at his sentencing hearing.

### b. Untimely Government Responses

Defendant alleges that the Court showed its bias by accepting untimely Government responses to his motions. Since the beginning of this case, in October 2005, the Court has ordered multiple extensions, adjournments and continuances, often upon stipulation by the parties. (Docs. # 22, 27, 31, 43, 53, 74, 132 & 151). The Court may, in its discretion, grant extensions and ignore minor filing delays, and its decisions do not show a pattern of bias against Defendant.

### c. Motions summarily denied

On a few occasions, the Court dismissed Defendant's motions summarily, either because Defendant had not presented any new arguments (Doc. # 26 (Order on Renewed Motion Revocation of Order of Detention); Doc. # 87 (Order on Motion for Reconsideration)), or by referring to "the reasons stated in the Government's response" (Doc. # 82 (Order on Motion for Bill of Particulars)). In each case, the Court did so after complete review of Defendant's motions, and deciding that it could not add to its prior holdings or improve upon the Government's reasoning.

### B. Defendant's Complaint to the Judicial Council

Attached to Defendant's motion is a copy of his Complaint to the Judicial Council dated October 23, 2008. The Complaint mentions a letter that Defendant purportedly sent to the Court expressing his concern about judicial bias ("the Letter"). This Letter is not attached to Defendant's motion. Furthermore, it does not appear on the Court's docket, and I have no recollection of receiving it. On October 31, 2008, the Sixth Circuit

sent the Court a notice of Defendant's Complaint.  This notice includes a copy of the Letter dated November 14, 2007.  Defendant's Letter pre-dates his Complaint, and it contradicts several allegations made in the Complaint.

The Complaint and Letter describe an incident in February 2000 where Ms. Alexander stabbed Defendant in the face, causing massive blood loss, nerve damage, and a eight-inch facial wound that required 106 stitches to close.  They both explain that Ms. Alexander was charged with the attack, but was subsequently released on bond, and now works as a registered nurse.

Defendant's Letter and Complaint diverge sharply where the Court is concerned. In his Complaint, Defendant asserts that I personally advocated for Ms. Alexander's release on bond.  In his Letter, Defendant makes no such claim, but instead takes credit for convincing the judge to grant Ms. Alexander a downward departure on her sentence. The Complaint also alleges that I personally helped persuade the Michigan Board of Nursing to ignore Ms. Alexander's criminal record so she could receive her license. Again, the Letter presents a different story: there, many individuals, including parents of Ms. Alexander's friends, are described as supporting her application.  The Letter does not mention the Court, or suggest that I was among those who lobbied for Ms. Alexander.  In fact, Defendant states in his Letter that it was *his* personal intercession that convinced the Board to grant Ms. Alexander's license.  Finally, Defendant's Complaint claims that Ms. Alexander told "all of her friends and associates, including [this Court], that the act was committed in self-defense."  (Def.'s Mot. Attach. 1 at 2.) The Complaint further states:

In a conversation that I had with Teberah from prison, she told me that

9

> [the Court] detained me, not because I am truely [sic] a danger to the
> community or a true flight risk, but because of [the Court's] existing dislike
> for me.

(*Id.* at 1-2.) By contrast, the Letter does not mention any conversation with Ms. Alexander. It only states:

> In 2000 a friend of Teberah's named Tosha told me that she (Teberah)
> had many people (who do not know me) believing that I had been beating
> Teberah. But the individuals who truely [sic] know me . . . know for a fact
> that I never beat Teberah. . . . It is my good guess that Teberah
> misguided [Your Honor's daughter] which possibly poisoned Your Honor. I
> did not hit, beat, or mistreat Teberah at any time.

(Def.'s Nov. 14, 2007 Letter at 4-5.)

Defendant's Letter contradicts his Complaint in significant ways. Written in November 2007, the Letter appears to reflect Defendant's genuine concern, upon learning that Ms. Alexander and my daughter were acquaintances, that I would not be able to treat his case with the fairness and impartiality owed every criminal defendant. On the other hand, Defendant's Complaint conclusorily states that the Court helped Ms. Alexander in 2000, and is now pursuing a personal vendetta by detaining him for no proper reason. The Court notes in passing that, in July 2007, Defendant appealed his pre-trial detention to the Sixth Circuit, which concluded that his continued detention was warranted. *U.S. v. Pegross*, No. 07-1846 (6th Cir. Sept. 21, 2007).

In his Complaint, Defendant relies heavily on statements purportedly by Ms. Alexander, without stating when they were made. Assuming, for purposes of discussion, that Ms. Alexander indeed made these claims, they are untrue. The Court was not involved in the February 2000 incident between Ms. Alexander and Defendant. Before I read the PSIR, I had no idea Defendant was the person with whom she had her

10

altercation. I did not advocate for Ms. Alexander at the time, or contact an attorney to represent her. Furthermore, I was unaware until this motion that Ms. Alexander was a registered nurse, and I had no role in the Board's decision to grant her license.

Finally, Ms. Alexander is not, and has never been, an "associate" of the Court, and she is not in any way privy to the Court's reasoning concerning Defendant.

### C. Ruling on the Merits

#### 1. 28 U.S.C. § 144

Contrary to a § 455 motion, where the reasonable appearance of bias suffices to compel recusal, "a motion to disqualify under § 144 requires a showing of actual bias." *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004). Facts stated with particularity must be taken as true, but assertions of a conclusionary nature are not enough. *Scott*, 234 Fed Appx at 352; *Cleveland v. Krupansky*, 619 F.2d 576, 578 (6th Cir. 1980). In *Hoffman v. Caterpillar*, the Seventh Circuit elaborated on the requirements for a § 144 motion:

> The facts alleged . . . must be legally sufficient and demonstrate the judge's personal bias or prejudice against a party. A court may only credit facts that are "sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient." The factual allegations must fairly support the charge of bias or impartiality and must be specific -- including definite times, places, persons, and circumstances. And while a court must assume the truth of the factual assertions, it is not bound to accept the movant's conclusions as to the facts' significance.

368 F.3d at 718 (*quoting U.S. v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993)) (internal citations and footnote omitted).

On the most basic level, Defendant's Complaint is too seriously contradicted by

11

his Letter to support a charge of bias. Defendant fails to cite concrete evidence from which personal bias could be inferred. Even assuming that my daughter and Ms. Alexander were friends, Defendant's reference to Ms. Alexander's "one-sided untruths" and their prejudicial effect on the Court are too vague to demonstrate personal bias.

Defendant's allegations of bias are also contradicted by the timing of the events. As explained above, when Defendant was first detained, the Court was unaware that it had any information on him besides what was presented in court filings and by the Court's probation and pre-trial services offices. I did not discover the connection between Defendant and Ms. Alexander until reading the March 27, 2008 PSIR. By that time, Defendant had already pled guilty to the offense, and the Court had denied his motion to withdraw his plea; in fact the Court had ruled on all 22 motions Defendant had filed to that point. There was also nothing in prior court filings that alerted the Court to Defendant's relationship with Ms. Alexander. The Court simply had no knowledge of their common history; thus, adverse rulings on Defendant's motions cannot be said to be based on prejudice.

Defendant's 28 U.S.C. § 144 motion and affidavit fail to make the required showing of actual bias.

### 2. 28 U.S.C. § 455(a) and (b)(1)

A § 455 motion for recusal carries a lighter burden of proof than one under § 144. Here, the fundamental question is whether a fully-informed, reasonable person would doubt the Court's impartiality. *Hartsel*, 199 F.3d at 820. An objective review of the facts does not support this conclusion.

The Court agrees that confidence in the impartiality of the judiciary is vital to our

system of government, and recognizes that in close cases, a judge should withdraw for the sake of avoiding even the appearance of bias. *See Dandy*, 998 F.2d at 1349. However, this is not such a case. The fact that a link exists between Ms. Alexander and the Court does not, by itself, create an appearance of prejudice. "That a judge knows someone does not require recusal. . . . The judge must look to the strength of the relationship to decide recusal." *In re Complaint Against District Judge Sarah Evans Barker*, No. 93-7-372-5, at 2 (Judicial Council of the 7th Circuit, May 26, 1993) (*quoted in Sexson v. Servaas*, 830 F. Supp. 475, 478 (S.D. Ind. 1993)). A connection so attenuated as outlined above does not support unsubstantiated claims about Ms. Alexander "poisoning" the Court's perception of Defendant.

Defendant also fails to provide objective evidence of the Court's bias or prejudice. *See U.S. v. Arhebamen*, No. 02-cr-80761, 2003 U.S. Dist. LEXIS 26614, at *18 (E.D. Mich. Nov. 20, 2003). Defendant claims that the Court's rulings on his motions are evidence of personal bias. "Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky*, 510 U.S. at 555 (internal citation omitted). A court ruling may support a bias or partiality challenge if it shows "reliance upon an extrajudicial source" or "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.*

A reasonable person reviewing the Court's rulings would not question whether they are the result of bias against Defendant.

## V. CONCLUSION

The Court holds that no reasonable person objectively considering the facts of

13

this case would question either its impartiality to date, or the ability of the Court to continue to handle Defendant's case in a manner both fair and just. Accordingly, Defendant's motion is **DENIED**.

    **IT IS ORDERED.**

                                              **S/Victoria A. Roberts**
                                              **Victoria A. Roberts**
                                              **United States District Judge**

**Dated: December 4, 2008**

> **The undersigned certifies that a copy of this document was served on the attorneys of record and Sherman Pegross by electronic means or U.S. Mail on December 4, 2008.**
>
> **s/Carol A. Pinegar**
> **Deputy Clerk**